## MARYLAND CASUALTY CO. v. GARRETT.
### (No. 2311.)

Court of Civil Appeals of Texas. El Paso. June 20, 1929.

Rehearing Denied July 8, 1929.

Kemp & Nagle and E. R. Smith, all of El Paso, for appellant.

R. H. Vogel, of Dallas, for appellee.

WALTHALL, J. The appellant, Maryland Casualty Company, brought this suit in the district court of Crane county to set aside an award of the Industrial Accident Board of the state of Texas, of $5,776.88, made in favor of J. I. Garrett, an employee of the Tidal Oil Company, employer, the Maryland Casualty Company, insurer, under the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309).

Appellee, Garrett, defendant in the trial court, answered by general demurrer, general denial, and by cross-action, alleging that on the 22d day of April, 1928, he was in the employ of the Tidal Oil Company, which company carried a policy of compensation insurance with the Maryland Casualty Company, and that on said date, while in the course of his said employment, he sustained injuries by reason of a sudden and unexpected flow of hydrogen sulphide gas, a poisonous substance, emitted from the oil well of said company where he was working, which gas and particles of oil he was caused to inhale and breathe into his lungs, and which were forced into his nose, mouth, and bronchial tubes, and that by reason thereof a dormant tubercular bacilli was caused to become active and developed a disease known as tuberculosis, and that by reason of which he has since that date been totally and permanently physically disabled. Garrett further alleged that he was working under employment agreement seven days a week, and that his average weekly wage was $30.28; he prayed for judgment for compensation for total and permanent disability, claiming compensation for 400 weeks from June 15, 1928, and asked judgment in a lump sum.

Appellant, by supplemental petition in answer thereto, filed a general demurrer and general denial.

The case was submitted to a jury upon special issues.

On the several special issues submitted the jury found substantially the following:

1. J. I. Garrett was in the employ of the Tidal Oil Company on April 22, 1928.

2. He sustained a personal injury on April 22, 1928.

3. Garrett was totally disabled as a proximate result of the injuries sustained about the 22d day of April, 1928.

4. The injuries sustained by Garrett on April 22, 1928, will be permanent.

5. A failure of the insurance company to

pay Garrett any compensation which he may recover in a lump sum will work a manifest hardship and injustice on Garrett.

6 and 7. These questions were on the percentage of Garrett's disability, in the event such would change from time to time and were not answered.

8. The injury was received by Garrett while engaged in and about the furtherance of the affairs or business of his employer, the Tidal Oil Company.

9. The inhalation of gas and oil by Garrett on April 22, 1928, excited a latent and dormant tubercular condition.

10. The condition of Garrett is directly and proximately caused by the inhalation of oil and gas on April 22, 1928.

11. There was no intent on the part of the Tidal Oil Company, or Garrett, to violate the criminal law of the state of Texas by reason of Garrett's employment requiring him to perform work on Sunday.

12. The jury finds from a preponderance of the evidence that the personal injury sustained by Garrett on the 22d day of April, 1928, is the sole cause of his present physical condition.

13. The jury finds from a preponderance of the evidence that any disability sustained by Garrett is not the result of his inhaling hydrogen sulphide gas in small quantities over a period of several months.

14. The jury finds from a preponderance of the evidence that Garrett's disability is not the proximate result of his inhaling oil and gas in small quantities over a period of several months.

15. Garrett did not fail to take proper care of his own welfare after April 22, 1928.

16, 17, and 18. Conditional and not answered.

19. Practically the same as answers 13 and 14.

20. "Is the physical condition of the defendant, Garrett, as the same now exists, the result of a previous condition existing in the physical condition of the defendant prior to the time he was injured, if he was so injured? Answer yes or no." The jury answered, "No."

On the above answers judgment was rendered that appellant take nothing by its suit, that the final ruling and decision of the Industrial Accident Board theretofore rendered be set aside, and that Garrett, on his cross-action, have judgment in his favor for the lump sum of $5,776.88, and interest at legal rate thereon from date.

Appellant insurance company filed assignments of error and has duly perfected this appeal.

## Opinion.

There are some matters of agreement the parties hereto entered into which we will state briefly without quoting therefrom at length. It was agreed that the appellant, Maryland Casualty Company, is a Maryland corporation and authorized to do business in this state; that the Tidal Oil Company was a subscriber to the Texas Employers' Liability Act through and by virtue of a policy of compensation insurance carried with appellant during the entire year of 1928; that all notices affecting jurisdiction were duly given; that Garrett filed his claim for compensation in due time; that, in the event judgment is rendered for compensation, the rate shall be based on a daily wage of $5 per day and a weekly compensation of $17.31; that April 22, 1928, was on Sunday.

■ Appellee Garrett made his claim for compensation based on a seven-day week employment contract, and for an injury which occurred on Sunday, which facts appellant insists show an illegal contract of employment, being in violation of the criminal laws of the state, and renders his contract of employment with the Tidal Oil Company illegal and unenforceable. If, for reasons stated, Garrett's contract of employment is illegal and unenforceable, it could not be said that he was in the service under a contract of hire and would not in fact be an employee within the meaning of the Workmen's Compensation Act.

Appellee Garrett testified, in substance: Is 37 years old, married, and has a wife and three children; his usual trade or occupation is an oil field worker and has been for eight years; at times was fireman, roustabout, and pumper. A roustabout works around the well pulling tubing, rods, replacing cups, reinserting pipe in the hole, and other work around a well. During April, 1928, and on April 22d, was working for the Tidal Oil Company at Crane; was in the employ of the Tidal Oil Company and was injured; "we were working pulling a well, or running the pipe back in the hole; while setting the pipe in the slips, just as set down on the slips, the gas came out with a bad force striking me in the face. The oil is cold, not ice cold, but cold, and unexpectedly it came out just like that (indicating). I jumped back and it strangled me and produced a cough. I went to coughing immediately. I was not really unconscious, but I was like a blind man and didn't realize what was going on around me. I staggered across the floor and put my arm around a derrick and cleared my throat until I was able to stand without assistance, and in a few minutes time, ten or twenty minutes, we went back and went ahead with our work. At the time this gas came out of the well Slim Lenaman and Elmer Taylor and another roustabout, whose name I do not know, were present. I was working under Slim Lenaman. * * * I continued to work that day and continued working until June 15th. I ceased work because my physical condition became so weakened from loss of sleep, loss of weight, continued fever and coughing, that I was too weak to continue work prior to June 28th, I believe my physical condi-

tion was as good as any living man's. I weighed about 228 or 230 pounds. I have not weighed recently. I have not worked for any one since June 15, 1928, because I was not able. I do not have any means of income and do not own any property. I have earned practically nothing since June 25, 1928. Estimated in dollars and cents I have earned perhaps twenty-five dollars. I worked seven days a week for the Tidal Oil Company. On April 22, 1928, my rate of pay was five dollars and a quarter. I began working in the Crane oil field on the 7th of November, 1927. One day I worked for the Independent, the following thirty days for the Eastland and the balance of the time I worked for the Tidal Oil Company."

On cross-examination: "I started to work for the Tidal Oil Company the 8th day of December, 1927. Yes, I said that I was working on the well April 22, 1928, when the injury occurred, and didn't lay off until June 15, 1928. I have worked around quite a few oil fields. As to noticing the gas in the atmosphere, especially in this oil field; this gas is practically invisible. You can smell it. As to that gas being in the atmosphere practically all the time around the oil fields, at times there is and at times you wouldn't smell it. Taking the Tidal Oil field where I was working April 22, 1928, the gas is in that field in places most of the time, and a person working in that field naturally breathes that gas if he is in it. The gas from those wells is taken care of through the tubes, and those tubes go to a torch and the gas is burned. Yes, on April 22, 1928, the tubes were there; they were there when I began working there. At times when the wells are being pulled you will smell the gas in the atmosphere; you are liable to get in it if you don't watch. * * * The gas comes out when the wells are being pulled, yes. At times a man would smell this gas in the fields in small quantities; at other times he wouldn't get in it, it depends on whether you are at the outlet when this gas is coming out. * * * As to how many times I would say I smelled gas out there in unusual quantities and with unusual force prior to April 22, 1928, that would be the first I noted of any force to speak of at all. * * * I helped pull several wells. I was in the bull pipe gang up to a few weeks before I went to work as a roustabout. I suppose I pulled five or six wells altogether. In setting slips gas sometimes escapes from the well, but not much. * * * On April 22, was the first time I received any heavy dose. After that time I did note a heavy amount of gas, or enough to make me feel at any time. As to never having had to lay off a few minutes except on April 22nd, 1928, that is the only time I had to move back. There are times I have stepped back knowing that it was coming. * * * turn his head or step to one side to prevent inhaling it. When this oil comes out of the well it is usually a spray

of oil and gas. * * * Yes, I worked seven days a week. As to me starting to work under an agreement to work seven days a week. I went to work as any other oil field worker would go to work, to work regularly as any man would, and all oil field work is seven days a week. As to knowing when I went out there that I would work seven days a week, that was my intention."

Witness testified at length as to his physical condition. Briefly stated: Said about June 14th he had a cough, was losing weight, had heavy temperature, mostly in afternoon from 1 to 5 o'clock. When he first got Dr. Lansing to look him over his lungs were sore and was coughing quite a bit; was having temperature in afternoons and losing flesh continually; at time of testifying was about 30 or 35 pounds under weight. Saw Dr. McCamant in El Paso; told him about being injured April 22, and did not tell him that he had been knocked out by gas prior to that time, nor that on numerous occasions he had inhaled poisonous gas in small quantities; said his physical condition at time of testifying was that he had a pain or burning feeling through the front part of his chest and had temperature, but not every day. At times for several days he would have no temperature; then for about same length of time would have.

Mrs. Garrett testified: She had been with appellee, her husband, for 16 years at all times up to and including April 22, 1928; the condition of his health prior to April 22, 1928, was good; "observed an awful change in his health since then; he coughs continually; doesn't sleep well; doesn't eat; at times loses weight and then gains a little and then loses; he doesn't seem like the same man since then. * * * He does not rest well at night. * * * Had a case of flu some five years ago. * * * He didn't have pneumonia."

We have carefully reviewed the evidence of all the witnesses and have concluded therefrom that: While Garrett in his cross-action, placed in evidence, and in his evidence on the trial, shows that his contract of employment called for seven days labor per week, that he worked seven days a week, and that during his employment with the Tidal Oil Company he was earning and drawing a daily wage and working seven days per week, and that the accident in which he claims to have received his injury occurred on Sunday, April 22, 1928, we are not prepared to say, as a matter of law, that Garrett's cross-action pleading is subject to appellant's general demurrer because it calls for labor on Sunday in violation of the criminal law of this state, as suggested in some of its propositions.

Article 283 of the Penal Code provides against any person obliging an employee or workman to labor on Sunday; article 284 of the Penal Code provides that such inhibi-

tion shall not apply to works of necessity, and the cross-action on its face does not show that Garrett's work was not a work of necessity. A review of the evidence does not, in our opinion, necessarily show that the work he was obligated to do was not a work of necessity. The work he was obligated to do was that of a helper, a roustabout, in the oil field in which he was engaged to work, a work incident to some other work, and, apparently a work of an economic and moral necessity. The Legislature does not define what is meant by the general term "necessity." The term seems not to be limited to an unavoidable, physical necessity. The cross-action pleading is too meager, we think, in its statement as to the obligation to work seven days a week for this court to hold that it necessarily contravenes our criminal statute. In 5 Words and Phrases, First Series, page 4729, it is said: "The term 'necessity,' as employed in the Sunday statutes, is generally given a liberal rather than a literal interpretation by the courts," and refers to a large number of cases as sustaining the statement. In Texas Employers' Ins. Ass'n v. Tabor (Tex. Com. App.) 283 S. W. 779, it is said that the question of intention to violate the Sunday law is an issue of fact for the jury in the interpretation of the contract of employment which does not conclusively show that it was intended that the employee should work on Sunday in violation of the Penal Code. Here the jury found that neither the Tidal Oil Company nor Garrett intended to violate the criminal law by reason of the employment to perform work on Sunday.

Maryland Casualty Co. v. Marshall (Tex. Civ. App.) 14 S.W.(2d) 337, is a case very similar to the instant case, in which it was insisted that Marshall's contract was void and unenforceable for the reason that it required Marshall to work seven days a week, including working on Sunday. The case is lengthy, and we will state only briefly the result of the holding. Marshall testified: "His contract of employment with the drilling company and the nature of his work was such that it was contemplated that he would work on straight time seven days per week; that it had to go on during seven days per week in that oil field especially." Judge Hall for the Amarillo court said: "It is a matter of common knowledge that, in the drilling of oil wells, certain conditions may exist or arise which require the continuous prosecution of the work after an oil well is spudded in, and, so far as the evidence shows, we must presume, in the absence of some contradiction of Marshall's testimony, that the necessity existed in this case. Where a contract is susceptible of two constructions, one of which would render it valid and the other illegal, the courts will construe it to be legal."

In that case, as in this, the question as to whether the work done on Sunday was necessary, within the meaning of our Sunday law, was not submitted to the jury. The court overruled the assignments submitting that the contract was unenforceable. In that case the Supreme Court granted a writ of error on two grounds, neither one questioning the correctness of the holding on the enforceability of the contract. The propositions suggesting that the contract of employment is void as contravening our criminal statutes, are overruled.

Appellee by his cross-action alleged that by reason of the inhalation of oil and gas into his lungs latent and dormant tubercular bacilli were caused to become active, and that by reason thereof he developed tuberculosis, which has totally and permanently disabled him from seeking and retaining employment in the future. He asked that the weekly payments be reduced to a lump settlement. The jury found that appellee was totally disabled as a proximate result of the injuries complained of; that the injuries he sustained will be permanent; and that a failure to recover compensation in a lump sum would work a manifest hardship and injustice on him.

Appellant, under its eleventh assignment of error, questions the sufficiency of the evidence to support the jury's finding that the inhalation of oil and gas by Garrett on April 22, 1928, excited a latent and dormant tubercular condition.

After a careful examination of the record we have concluded that this assignment must be sustained, and that, appellee's cause of action being based upon that theory, the case must be reversed.

Appellee in his cross-action alleged "as a direct and proximate result of said substance entering the lungs, an irritation was set up which weakened the resisting powers of the said J. I. Garrett and excited a latent and dormant tubercular bacilli to become active, and by reason thereof the said Garrett has developed a definite form of disease known as tuberculosis, and by reason thereof has been totally and permanently disabled since that date," and the case was tried in the lower court upon that theory.

The testimony of the physicians that a large per cent. of people have tuberculosis would not be sufficient to show that appellee was so afflicted.

We think the evidence not only fails to show that he had a latent or dormant tubercular condition, but that his own evidence, that "prior to June 28th I believe my physical condition was as good as any living man's," refutes the existence of such a condition.

There are other propositions presented which we will not discuss, as they will probably not arise on another trial.

For the reason above stated we have concluded that the case should be reversed and remanded, and it is so ordered.

Reversed and remanded.