**TRADERS & GENERAL INS. CO. v. HUNTSMAN.**

No. 13852.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 20, 1939.

Rehearing Denied March 3, 1939.

Lightfoot, Robertson & Gano and Dan P. Johnston, all of Fort Worth, for appellant.

Ratliff & Ratliff, of Haskell, and Donald & Donald, of Bowie, for appellee.

SPEER, Justice.

This appeal involves a construction of the Workmen's Compensation Act, Articles 8306, 8307 and 8309, R.C.S., and the various sections and subsections thereunder. Vernon's Ann.Civ.St. arts. 8306, 8307, 8309.

O. J. Huntsman was the employee to whom we shall refer as appellee. Traders & General Insurance Company was the insurer, to which we will refer as appellant, and Monty Staniforth, Jr., and F. T.

Johnson were the employers, to whom we will refer as such.

Within thirty days from the date appellee claims to have received an injury, while in the course of his employment, he gave notice thereof and filed claim for compensation. Insofar as is necessary to give the contents of these instruments, they were each filed with the Industrial Accident Board, as of March 13th, 1937, and stated appellee had received an injury on February 19th, 1937, while in the discharge of his duties to his employers. The notice contained, among other things, this clause: "State part of body injured: (Answer) Right leg and knee. Nature of injury as near as possible: (Answer) Injured muscles and ligaments in and above knee joint."

In the claim for compensation, this was said: "State part of body injured and nature and extent of injury: (Answer) Right leg and knee. Injured muscles and ligaments at and above knee. * * * Length of time regularly employed in same employment for this employer previous to injury: (Answer) One day."

On August 10th, 1937, the Industrial Accident Board entered its order containing jurisdictional findings and that appellee had an average weekly wage rate of $29.42, and was entitled to compensation at the rate of $17.65 per week, and that on July 19th, 1937, appellee "suffered injuries in course of his employment resulting in his total incapacity for performance of labor for an indefinite period in the future, not exceeding 200 weeks." The award ordered appellant to pay to appellee the amount found to be due each week for an indefinite period in the future not to exceed 200 weeks, unless changed by a subsequent award of the Board. The following additional provision is found in the award: "O. J. Huntsman is ordered to submit to surgical operation at the hands of a surgeon to be agreed upon by and between he and Traders & General Insurance Company on a date not earlier than September 20th, 1937, and not later than October 20th, 1937, unless operation is performed on an earlier date by agreement. Such operation shall be performed at a hospital to be designated by the operating surgeon, and the reasonable expense incident shall be paid by the Traders & General Insurance Company."

On August 28th, 1937, less than twenty days after the entry of the award by the Board, appellant (Traders & General, the insurer) gave written notice to the Industrial Accident Board it was not willing and did not consent to abide by the action of the Board in making the award on August 10th, 1937, and said that it would appeal from said award to a court of competent jurisdiction. It did thereafter file its petition in the District Court of Montague County, Texas, on September 11th, 1937, by the terms of which it plead, among other things, that the Industrial Accident Board did enter its final award in said matter on the date hereinabove shown and alleged all other necessary jurisdictional matters. Prayer was for notice and a judgment setting aside and holding for naught the award of the Board.

Appellee (Hunstman, the employee) replied to appellant's action by general denial and by cross action, alleging all necessary jurisdictional matters. He alleged that he sustained the injuries complained of at the date shown in the claim filed, while in course of his employment. That the injuries mentioned in his claim so filed (which as we have shown were to his leg and knee and the ligaments above and below the knee) had affected other parts of his body, setting out specifically and in much detail the parts of the body so affected, the manner and extent thereof, which allegations are unnecessary to be repeated here, and that because of the injuries he was totally and permanently incapacitated to perform manual labor, such as he had previously been able to and did perform. He, too, plead the finality of the Board's award and asked that it be set aside and that he be allowed compensation for total and permanent disability. He further alleged his average weekly compensation should be based upon his average weekly wage of $5.10 per day, seven days in the week, and that he "was employed steadily the year around at such or similar employment at the average wage of at least $5.10 per day." In the alternative, he alleged that there were other employees engaged in the same employment in that and neighboring vicinities, who had worked for a full year next preceding the time of his alleged injuries, who received an average weekly wage of $5.10 per day, and yet in another alternative, he alleged that if he be mistaken in the two former allegations concerning average weekly wages, that he was entitled to compensation based on such aver-

age weekly wage, to be computed in such manner as may seem just and fair to all parties. Other allegations set out that he had employed counsel to represent him and a state of conditions which would entitle him to a lump sum settlement.

Appellant answered the cross action by general denial and special pleas to the effect that the claim filed by appellee with the Industrial Accident Board was not such one as would authorize the Board to award compensation for an amount in excess of $500, and for that reason the district court was without jurisdiction to hear and determine his cross action. It further alleged that no final award had been made by the Board, in that said award did not show upon its face, nor was there any proof, that said award was passed or acted upon by any member or members of the Board, especially by a majority or quorum thereof, and such alleged award was of no binding force and effect, as contemplated by law.

Thereafter, on November 22nd, 1937, appellant filed its motion, asking that it be allowed to take a non-suit and that its suit be dismissed.

The foregoing motion being overruled by the court, appellant filed a further plea to the jurisdiction of the court to hear appellee's cross action, alleging that the award of the Board was not final, (a) because it was for an indefinite period of time, and (b) because the award showed upon its face that a surgical operation had been ordered by the Board (in terms above shown by us) and that no operation had ever been performed and therefore the Board retained jurisdiction and could make no final award until the surgery was done.

Appellee replied, alleging the finality of the award, that the attempt of the Board to order surgery was void and of no effect, for (a) it had no legal authority to make such an award, (b) that the attempted award, provided that an operation be performed not earlier than September 20th, 1937, and not later than October 20th, 1937, by a surgeon to be agreed upon by the parties, and (c) the appellant declined to abide by the award so made, and declared its intention to file suit prior to the earliest date named in which an operation was to be performed. He further alleged that he did, prior to the institution of the suit by appellant, attempt to agree with it upon an operation, but its

representatives would not agree unless it could name the physician, and the hospital; whereupon, he withdrew his offer to undergo such operation.

The motions of appellant to be permitted to take a non-suit and to dismiss its action, as well also its plea to the jurisdiction of the court, were overruled, to which rulings it excepted.

A jury was empaneled and special issues submitted by the court, all being answered favorably to appellee, the court entered judgment in favor of appellee for lump sum; exception was taken and this appeal was properly perfected.

By its propositions one to seven, appellant complains of the action of the trial court in refusing to sustain its motion for non-suit and dismissal of the case, and thereafter entertaining jurisdiction of this cause.

At the time appellant made the motion for non-suit and to dismiss, it was the active plaintiff in the case, and if no cross action had at that time been filed by appellee, in which he sought affirmative relief, there is no question but that its motion should have been sustained. Article 2182, R.C.S. reads: "At any time before the jury has retired, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. When the case is tried by the judge, such non-suit may be taken at any time before the decision is announced."

Omitting the formal parts, appellant's motion was in these words: "Now comes the plaintiff, Traders & General Insurance Company, in the above entitled and numbered cause and states to the court that it does not desire to further prosecute its suit herein and desires to take a non-suit, and moves the court to dismiss its suit herein against the defendant at the cost of said plaintiff."

The court properly overruled the motion under the circumstances then before him. If no cross action had been previously filed by appellee, it would have been the imperative duty of the court to sustain the motion. If it could be said that appellant had the right to have its suit to set aside the award dismissed, the court's failure to do so is harmless under the facts before us. The pleadings of appellee were sufficient within themselves to form the basis of an action to set aside

the award of the Industrial Accident Board, except that they did not disclose that he had given notice to the Board that he would not abide by the award and further the cross action was not filed within twenty days thereafter. The suit by appellant was to set aside the award of the Board, in which it appears that it had given notice of its intention not to abide by such award, and suit was filed within the statutory time. The rule in such cases is announced in 45 Tex.Jur. p. 779, sect. 282, in this language: "The filing of a proper suit to set aside an award operates to bring all the parties and the entire controversy before the court for a trial de novo, the court being invested with power to determine every issue involved (whether presented to or acted upon by the Board or not), and to award such compensation as it may deem proper, up to, but not in excess of, the maximum allowed by law."

Many cases are there cited sustaining the rule announced, to which we also refer. The parenthetical clause in the quotation is too broad to cover a case where hernia is involved. See Tally v. Texas Employers' Ins. Ass'n, 129 Tex. 134, 102 S.W.2d 180. But the "hernia" issue is not involved in this case.

A very material part of the subject matter of this suit was involved in whether or not appellee was willing to abide by the award made by the Board, and not having expressed himself one way or the other, and the time not having expired in which he could do so before appellant perfected its appeal to the court, he could rely upon the acts of appellant, and the latter's pleadings disclosed its intention and the perfection of the appeal. To have dismissed the suit would have deprived appellee of a substantial right. It was said, in Davis v. Wichita Bank & Trust Co., Tex.Civ.App., 286 S.W. 584, page 589, writ dismissed: "If, however, a nonsuit by plaintiff would materially affect the legal status of the subject-matter of the suit, or any party to it, the non-suit should not be permitted. United Motor Dallas Co. v. Hendricks, (Tex.Civ.App.) 168 S.W. 878; Wolf v. Wolf (Tex.Civ. App.) 269 S.W. 488, [writ dismissed]; Dunlap v. Southerlin, 63 Tex. 38; Jackson v. Furst, Edwards & Co. (Tex.Civ. App.) 154 S.W. 243; Leverette v. Rice (Tex.Civ.App.) 151 S.W. 594; Hardin v. Majors (Tex.Civ.App.) 246 S.W. 100."

As a further reason why appellant suffered no injury by the court failing to sustain its motion, no further obligation rested upon it to prosecute its suit, but it was bound, as it did do, to remain in court and defend appellee's cross action. If the court had dismissed its action such dismissal would necessarily have been with prejudice, for it could not thereafter have filed a similar suit to set aside the award, for the reason, the time had expired in which it could do so.

Under other propositions included in the group here under discussion, it is contended by appellant that the court was without jurisdiction because the award of the Board was not final, for (a) the compensation awarded was to run for an indefinite time, (b) an operation was ordered, none was performed and the Board retained jurisdiction until the result of the operation could be determined, and (c) the claim filed with the Board disclosed only an injury to a specific member of the body, the maximum compensation for which was prescribed by law, and the court had no jurisdiction to hear and consider an enlargement thereof.

▇ Under the provisions of the Act, Art. 8306, R.C.S., sect. 12d, the Board may, at any time during the period of compensation, upon its own motion or the application of either party showing a changed condition, enter an order ending, diminishing or increasing the compensation so awarded, or may change or revoke its former order. If an original award should be for compensation during a specific and definite period, the Board would have the same right to alter or change it at a subsequent date that it would have had, if the award had been made for an indefinite period, as was done in this case.

It has often been held that an award is not bad for lack of finality because it provides for compensation at so much per week "not to exceed" a specified number of weeks. Lumbermen's Reciprocal Ass'n v. Warren, Tex.Civ.App., 272 S.W. 826, writ refused; Vestal v. Texas Emp. Ins. Ass'n, Tex.Com.App., 285 S.W. 1041; Traders & Gen. Ins. Co. v. Baker, Tex. Civ.App., 111 S.W.2d 837, writ dismissed.

▇ Whether or not an award is final, where an operation has been ordered and none had been performed at the time an appeal to the court is taken, depends upon

(1) the right of the Board to order surgery, and (2) the nature of the award so made.

There is some similarity, as contended for by appellant, between the provisions of the statutes which provide for an operation in cases of hernia, Article 8306, sect. 12b, subd. 4, R.C.S., and sect. 12e of the same article, which provides for an award to be made ordering an operation in other classes of claims. Unlike the provisions relating to hernia, the Board shall order an operation in other kinds of compensable injuries, only, (a) when one of the parties requests it in writing, (b) after the Board has ordered a medical examination, from which it is found that there are no extra hazardous circumstances attending it, (c) after an order has been made finding that it is advisable, and finally, (d) "It [the board] shall make its order to that effect, stating the time and place when and where such operation is to be performed, naming the physicians therein who shall perform said operation, and if the employé refuses to submit to such operation, the board may order or direct the association to suspend the whole or any part of his compensation during the time of said period of refusal."

An order was made in this case for an operation, as appears from the statement made by us in the beginning of this opinion. It is only by virtue of the statutory provisions that such an order could be made, and it follows that it could only be under the conditions and in the manner therein set out. The record does not disclose that any request for an operation was made by either of the parties. If such a request had been made, no order by the Board was made for medical examination, nor the finding of the Board as to whether or not it was advisable, are shown. The order made did not designate the physicians who should perform the operation nor the time and place when and where it should be performed. The order provided that an operation should be performed not earlier nor later than designated dates, and by a physician to be agreed upon by the parties, and at such place as the physician should name. That part of the award pertaining to an operation was a nullity and should be treated as surplusage. The Workmen's Compensation Act is exclusive of all other remedies, and must be followed. Traders & Gen. Ins. Co. v. Chancellor, Tex.Civ.App., 105 S.W.2d 720, writ dismissed; Heard v. Texas Compensation Ins. Co., 5 Cir., 87 F.2d 30. By appellee's brief he states: "It is true that O. J. Huntsman asked for an operation." But the pleadings and evidence, insofar as we have been able to discover, do not disclose this. If they did show such a request, it would logically follow that the order based thereon, to be effective, must show that the statutory provisions in such cases were followed. Such a request would mean that it was made upon the assumption that the Board would be guided by the statute.

It is contended by appellant that the claim filed was for an injury to a specific member of the body, for which the statute provides the maximum compensation to be awarded, and that the court was without jurisdiction to hear and determine a rate of compensation for an enlargement of that claim showing injuries to other portions of the body resulting in incapacity to labor.

■■ It is well settled in this State that all claims for compensation must be filed with the Industrial Accident Board, and passed upon by it before an action can be maintained in court against the insurer. It is also true that after the Board has acted upon the claim and made its award, that if the employee is dissatisfied with the award and does not see fit to abide by it, he may appeal to the courts for relief, but his trial in the court must be upon the same claim for injuries which he had presented to the Board. Stratton v. Gulf Casualty Co., Tex.Civ.App., 53 S.W.2d 518; Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752, writ dismissed; Hartford Accident & Ind. Co. v. Choate, 126 Tex. 368, 89 S.W.2d 205.

■ In this case the claim filed was for an injury to the knee, and the muscles and ligaments above and below the knee. If viewed technically, the claim would be one for specific injuries for which the compensation is limited in Article 8306, sect. 12, R.C.S. If appellee had limited his claim to injuries to the leg, as was done in the Choate case, supra, then the Board could not have heard evidence as to any other injuries resulting from the one specifically claimed; but the Industrial Accident Board is not a court, it is only an administrative body. Its inquiries and type of evidence to be heard and considered are not controlled by any rules of evidence known to the jurisprudence of this State; its rules are simple and summary. We know of no rule or reason why it could not have inquired into every phase of appellee's injuries, as well as the extent of their results; the pre-

·sumption is that it did its duty and entered its award in keeping with the results of all the responsibilities enjoined·upon it. If these deductions of ours are correct, then the Board did exactly what appellee sought to have the court do upon the trial de novo. Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752, writ dismissed; Texas Indemnity Ins. Co. v. Bridges, Tex.Civ.App., 52 S.W.2d 1075, writ refused; Traders & Gen. Ins. Co. v. Chancellor, supra.

■ There is no contention here that appellee's suit did not involve the identical accident and injury to his knee mentioned in the claim filed. The complaint is that he had no right to enlarge upon the result of that injury and claim in court that it affected other parts of his body resulting in general incapacity. His right to ,thus enlarge upon his claim, if indeed they were not involved in the hearing before the Board, has often been recognized by our courts. There is no statutory form set by law for the manner and extent of description of an injury to be set out in a claim when filed with the Board. In most cases that we have noted, they are mentioned in an abbreviated form, without laying a predicate for the introduction of testimony to show the extent and effect of the injury. No necessity exists for such a predicate under the rules of the Board. It may hear ex parte affidavits and doctors' reports without legal formalities.

In Petroleum Casualty Co. v. Seale, Tex. Com.App., 13 S.W.2d 364, it was held that an employee who had filed a claim for an· injury to his foot was not confined to that specific injury, when tried de novo before the court, but could recover compensation for incapacity on account of injuries to other parts of his body resulting from the foot injury.

Standard Accident Ins. Co. v. Williams, Tex.Com.App., 14 S.W.2d 1015, holds that if injury to claimant's specific member does not stop with that member, but extends to other parts of the body, rendering him incapacitated, he may make proof of that fact upon trial in court and recover the greater compensation, rather than that provided by law for injury to the specific member.

Texas Employers' Ins. Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967, was a hernia case, which is classed as a specific injury, and it was there held that under proper allegations and proof, the employee was not confined to the specific injury, but could recover the greater compensation for disability.

Hartford Accident & Ind. Co. v. Choate, 126 Tex. 368, 89 S.W.2d 205, involved an appeal from an award by the Accident Board for the total and permanent loss of an eye, a specific injury, and the claim filed limited the recovery to that·specific injury, and on appeal to the court, an attempt was made to enlarge the claim so as to cover general injuries. The court in discussing the distinction between specific and general injuries, at page 207 of 89 S.W.2d, said: "We recognize the rule that ·for the class of injuries of the latter class [general] a general description in the claim made before the Accident Board is sufficient, and upon appeal to the courts may be enlarged to include all injuries ‚proximately resulting from the accident complained of (Indemnity Ins. Co. v. Harris (Tex.Civ.App.) 53 S.W.2d 631 [writ refused]), but such rule is not applicable where the claimant expressly excludes such injuries from his claim as filed with the accident board and in effect forbids the board from consideration thereof."

We see no error in the matters complained of under these propositions, and the assignments of error upon which they are based must be overruled.

■ Propositions eight to fourteen are based upon assignments ˙challenging the sufficiency of the testimony to support the findings of the jury that appellee was totally and permanently incapacitated.

The testimony adduced by the parties is conflicting as to the effect appellee's leg injury had upon his whole body and other members thereof, but Dr. Parnell testified to matters which, if believed by the jury, would support the verdict. His testimony was to the effect that appellee's knee had been injured to such an extent that the knee cap was loose, the tendons and ligaments were torn loose and the knee would drop back and forth as appellee attempted to walk; he had no control over it, that when the knee drops back too far he will fall; he is unable to walk further than three or four hundred feet at a time without resting; the knee injury had resulted in a shock to his entire nervous system, preventing natural and necessary rest and relaxation; ‚that when he takes the weight off of the injured leg and throws it upon the other, the pelvis is overtaxed and brings about an abnormal condition, result-

ing in curvature of the spine. That appellee would not materially improve in the future, witness thought he would grow worse and that his condition was permanent and he is totally disabled to do manual labor.

The assignments based upon the insufficiency of the evidence to support the verdict in these particulars are overruled.

Propositions fifteen to twenty-one, both inclusive, attack the issue as submitted, by which appellee's average weekly wage rate was determined.

The allegations made in appellee's cross action in this respect, as we have shown, embraced each of the three subsections to section 1, Article 8309, R.C.S. The testimony developed upon the trial was indisputably to the effect that appellee had only worked at his then employment one day when injured; that he had previously worked many times at similar employment, but that it was at intervals over a period of several years time. This eliminated a possibility of fixing the average wage under that sub-section.

The issue submitted and its explanation are as follows:

"Special Issue No. 19: What do you find from a preponderance of the evidence in this cause was the average weekly wage, if any, of the defendant, O. J. Huntsman, on February 19th, 1937?

"In answering the foregoing issue, you are instructed that you will consider the average daily wage or salary which an employee of the same class working the whole of the year immediately preceding February 19th, 1937, would have earned during the days when employed in the same or in a similar employment as that of defendant, O. J. Huntsman, in the same place, or in a neighboring place thereto; or if you are unable to determine the average weekly wage by the foregoing rule, then you will consider the average weekly wage in any manner which may seem just and fair to the parties in this suit, as you may determine from the evidence in this case."

The answer to issue 19 was "$35.70."

The objection to the issue and its explanation urged is that in the absence of any testimony as to whether or not appellee's average weekly wage rate could be fixed by either first or second subsections of section one of Article 8309, R.C.S., it was improper to give the jury the opportunity to fix it under subsection three; that there was a total lack of testimony by which the wage rate could be fixed, and that appellee had not discharged the burden imposed by law upon him to show that the average weekly wage rate could not be fixed under either sub-sections one or two before resorting to number three.

Insofar as we have been able to ascertain, no court has held that subsection one of section one, Article 8309, must be eliminated by a finding of the jury before resort may be had to subsection two, and likewise the elimination by a jury finding of two before resort is had to three.

The burden of proof is upon the claimant to show the rate cannot be fixed by one, before resorting to two, and that it cannot be determined from two before applying the rules under third subsection. As above shown, it is clear that the average rate could not be determined from appellee's wage rate for a year preceding the injury for he was injured on the first day of his employment.

As applicable to the test under subsection two, appellee testified in his own behalf as follows:

"Question: Have you known of other people working over there in that locality (where he was injured) in the same kind of work you were in, for more than a year prior to February 19th, 1937 (the date on which appellee claims to have been injured)? Answer: Yes.

"Question: What was the usual and customary wage for the same kind of work you were doing, for a year prior to February 19th, 1937? Answer: $5.10 was the least; $6.00 I guess would be the average."

The jury found that $35.70 per week was the average weekly wage rate. This, it will be observed, was the least amount testified to by appellee, and it is the amount upon which the compensation was computed in the judgment. It also appears from the record that the award of the Board was for $17.65 per week, and that appellant had paid to appellee in compensation the aggregate sum of $459.50, at the rate named in the award. The appellant claimed that said amount was paid under a mistake of facts surrounding the case.

No effort was made by appellant to controvert the testimony of appellee in regard to his own wage rate, and those of per-

sons engaged in similar employment in that vicinity for as much as a year prior to the time he claimed to have received his injuries. We think that where there is no controversy by the association of proof made to establish one of the means by which the average weekly wage rate is to be determined, a small amount of evidence, which carries probative force, is sufficient to support the court's assumption in submitting the charge as he did, that the evidence established the fact that the wage rate could not be fixed by first subsection under section one of article 8309, and that in the absence of anything to the contrary, the testimony offered as to subsection two, was sufficient to justify the submission of that issue and to support the verdict when returned. Article 2190, R.C.S., Vernon's Ann.Civ.St. art. 2190; Federal Underwriters Exchange v. Stewart, Tex.Civ.App., 109 S.W.2d 1031, writ dismissed; Traders & Gen. Ins. Co. v. Crouch, Tex.Civ.App., 113 S.W.2d 650, page 654, writ dismissed. The assignments upon which these propositions are based present no error and they are overruled.

Propositions twenty-two to thirty-one, both inclusive, are based upon the manner in which special issues are framed, and the language used relating to their answers. The issues complained of are Nos. 4; 5, 6, 8, 9, 11, 15, 16, 18 and 19, each of which propounds questions to be answered from a preponderance of the evidence and concludes with statements to the effect, that "You will answer 'yes' or 'no', as you find the facts to be."

The criticism urged to each is in substance: "That said issue is on the weight of the evidence and as framed when taken in connection with the definition in the charge of the term 'preponderance of the evidence' is confusing to the jury and in legal effect places the burden of proof on the plaintiff (cross defendant) to establish and secure a favorable answer to it from a preponderance of the evidence, which is a greater burden than the law imposes upon it."

This question was before us in the case of Traders & Gen. Ins. Co. v. Burns, 118 S.W.2d 391, and we disposed of it as shown at page 397, adversely to the contentions of appellant here. (The application for writ of error was dismissed by the Supreme Court upon joint application of the parties.) In support of our holding in that case, we cited Southern Ice & Utilities

Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956; Traders & Gen. Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682. Since we decided the Burns case, supra, the Supreme Court has rendered an opinion in the case of Gulf C. & S. F. Ry. Co. v. Giun, Tex. Com. App., 116 S.W.2d 693, 116 A.L.R. 795, which we consider strengthens our conclusions announced in the Burns case. There are decisions by some of our Courts of Civil Appeals which support appellant's contention here and others are to the contrary. We pointed them out in the Burns case, supra, and think it unnecessary to reiterate what we there said. The assignments are overruled.

Thirty-second proposition points out asserted error in the court's definition of "total incapacity to work". The explanation and definition complained of is substantially if not in the identical words of the approved form set out in 45 Tex. Jur., p. 585, sect. 159, where many cases are cited to which we also refer, as well also in United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344, page 345, cited by appellant. The assignment has no merit and is overruled.

Thirty-third proposition claims there was error in the submission of special issue No. 11. The contention is that it should have been submitted without the preamble or conditional provision which precedes it; the issue, as given, reads: "Special Issue 11. If you have answered special issue No. 6 with 'No' you need not answer this question, but if you have answered said issue with 'Yes' then answer the following: Do you find from a preponderance of the evidence in this case that the defendant, O. J. Huntsman, sustained any partial loss of capacity to work, if any, for any length of time as a result of injuries, if any, sustained by him on or about February 19th, 1937? Answer Yes or No, as you find the facts to be."

Special issue six, referred to in the preamble to the foregoing issue, reads: "Special Issue No. 6: Do you find from a preponderance of the evidence in this case that the defendant, O. J. Huntsman, sustained any incapacity to work as a result of the injury, if any, so sustained by him, on or about February 19th, 1937? Answer Yes or No, as you find the facts to be."

Special Issue No. 6 was answered "yes", and special issue No. 11 was answered "No". We fail to see how harm could

come to appellant's rights by the inclusion of the conditional provision which precedes issue No. 11. Issue six was an inquiry as to whether appellee sustained *any* incapacity to work as a result of the injury. It was answered in the affirmative. If it had been answered in the negative, then no liability for compensation would have rested upon appellant under any conditions and no necessity existed for an inquiry whether the incapacity was partial, total, permanent or temporary, for the very good reason the issue mentioned in the preamble would have disclosed there was no kind of incapacity resulting from the injury. The issue number six being answered in the affirmative, then and only then was it necessary to inquire as to the nature and extent of the incapacity sustained.

As supporting its contention that error was committed in the respects above mentioned, appellant cites us to the case of Texas Indemnity Co. v. Thibodeaux, 129 Tex. 655, 106 S.W.2d 268. We have many times studied and applied the rule announced in that case, but as we view it the same or a similar question is not involved here. There, the association had been deprived by the trial court to have the question of temporary and partial incapacity submitted unconditionally, simply because perchance the jury had found by a preceding issue that claimant's incapacity was permanent. The sole contention here is that the inquiry made in special issue 11, as to whether appellee had suffered a *partial* loss of capacity, was conditioned that the jury had first found under special issue six, that he had suffered *any* loss of capacity. We think no error is shown in the matter complained of, nor do we think there is any controlling similarity between these conclusions and the doctrine announced in the Thibodeaux case, supra.

Thirty-fourth proposition complains of the admission in evidence of the testimony of Dr. Parnell, in regard to injuries sustained by appellee to other parts of his body, which in the opinion of the doctor were the necessary and natural results of the injuries sustained by appellee to his leg and knee. The objection to the introduction of the testimony was that such injuries, if any existed, were not within the jurisdiction of the court, but that only inquiries should have been made and answered which would be applicable to the knee and leg injury. What we have said relative to the jurisdiction of the court to hear and try appellee's claim for enlarged injuries and loss of capacity to labor, because the leg injury directly produced them, disposes of this proposition against the contention of appellant.

We see no error in this record requiring a reversal of the judgment entered, and it is therefore affirmed.