## FEDERAL UNDERWRITERS EXCHANGE v. BICKHAM et al.

### No. 3561.

Court of Civil Appeals of Texas. Beaumont.

Jan. 6, 1940.

Rehearing Denied Jan. 17, 1940.

Touchstone, Wight, Gormley, Strasburger & Price, of Dallas, Levert J. Able, of Houston, and Benbow, Saunders & Holliday, of Dallas, for plaintiff in error.

Sanders & McLeroy, of Center, for defendants in error.

O'QUINN, Justice.

This is a workmen's compensation suit. W. G. Gray was the 'employer; Ed B. Bickham the employee; and Federal Underwriters Exchange the compensation insurance carrier. We shall refer to plaintiff in error as appellant, and defendants in error as appellees. On June 20, 1937, while engaged in the course of his employment as an employee of W. G. Gray, Ed B. Bickham received an injury resulting in his death. Mrs. Ellie B. Bickham, wife of Ed B. Bickham, deceased, individually, and as next friend for Joy Bickham and Ed Carroll Bickham, minor children of Mrs. Bickham and her deceased husband, Ed B. Bickham, duly filed claim for compensation with the Industrial Accident Board. On November 19, 1937, the Board made its final ruling awarding compensation to appellees. Appellant duly gave notice that it would not abide said award and filed this suit to set aside that ruling.

The case was tried to a jury upon special issues, upon their answers to which judgment was rendered for appellees for compensation at the rate of $20 per week for 360 weeks to be paid in a lump sum, one-third of said recovery being adjudged to attorneys representing appellees.

Appellant presents its first three assignments together. The first complains that counsel for appellees, while examining the jury panel, stated to said jurors in substance that appellant brought the suit to set aside the award of the Industrial Accident Board, and that the suit must be tried de novo, and that the burden of proof was upon the claimants to show they were entitled to recover, regardless of what it was, just to show that they were entitled to recover. That upon this statement being made, motion for mistrial and discharge of the jury was made by counsel for appellant because the statement of counsel for appellees was immaterial, irrelevant and highly prejudicial, and informed the jurors of the effect of the final award of the Industrial Accident Board on the claim, which motion was overruled by the court and was reversible error. This assignment is overruled. The statement did not inform the jurors what the award was, nor was the statement calculated to work injury to appellant.

The second assignment complains that the court committed reversible error in refusing to declare a mistrial and discharge the jury, because by reading to the jury certain portions of the appellees' answer and cross-action counsel for appellees had thereby informed the jury that an award had been made by the Industrial Accident Board in favor of appellees from which award appellant had brought this appeal. Appellant also incorporates into its bill of exceptions to the court's action in not sustaining its motion for mistrial, that it specially excepted to the allegations in paragraph 9 of appellees' first amended original petition and cross-action because said allegations were immaterial and irrelevant, were highly prejudicial and should be stricken, because they were conclusions of the pleader, allegations of law rather than fact, and were highly prejudicial, and the court committed reversible error in overruling its special exceptions. The court certifies the bill of exceptions with the qualification that the matters stated in the bill are certified only as the motion and objections of appellant. No facts are certified as having transpired or existed, merely the statement of counsel for appellant. We have examined the various portions of appellees' petition referred to by appellant and do not find anything that told the jury or was calculated to inform the jury what the award of the board was, but merely that an award was made. This certainly was not objectionable. No error is shown in refusing the motion to declare a mistrial.

The third assignment complains that the court erred in not sustaining its motion for a mistrial and discharge of the jury, because counsel for appellees by reading para-

graph 10 of their first amended original petition to the jury, considered in connection with other stated portions and allegations in said petition, in which plaintiffs alleged why the compensation should be paid in a lump sum. Appellant insists that the pleading informed the jury that the award of the board was in favor of appellees, and also was prejudicial to appellant. A careful reading of the pleadings in both paragraphs 9 and 10 of appellees' petition fails to disclose facts plead by appellees that would support appellant's contention. The assignment is overruled.

Assignments of error 4 and 5 complain of the following argument of counsel for appellees in his opening argument to the jury:

"I wish, gentlemen, when you go out you would carry this instrument with you (referring to defendants and cross-plaintiffs' Exhibit No. R-20, same being the instrument attached to the written deposition of R. O. Kniveton and marked Exhibit A and attached to the interrogatories of said R. O. Kniveton to said such written depositions). The first thing up here at the top, over here, it don't even have any consideration over here; it is left blank, for the consideration of blank dollars. Now, you read that instrument, and then you read the next one, over here it says 'The Delta Drilling Company, a Texas corporation; that is rubbed out and that is not in the other instrument either. That wasn't carried through because something fell through on that. The consideration over here is not named; that is the place there, not entered, and Kniveton signed every one of them, he was asked to put his name on every page so there wouldn't be any question about it being the same instrument he testified about. That is interlined; see if the other one is interlined. This one interlined there, and see if the other one is interlined. What else? Oh, gentlemen, the strongest detail in the whole case is right there—the 30th day of June, 1937, Kniveton wanted to get it back before the man's death but the facts, gentlemen, will not lie. We have been told that since we were boys and since we were children, and there it is, dated, and the notary public himself put his name in there, dated the 30th day of June, 1937, ten days after this man lost his life. If you will take that and hold it up between you and the sun I won't say you will, I will say I believe you can see it distinctly right there as the 30th

day there. What else? Shows Kniveton joining—"

"I withdraw that and ask the court to instruct the jury not to consider what I said about the notary part as far as I am concerned."

"I don't care who put it there, it's there," * * * I don't care about arguing with you gentlemen, what the notary did. That's right; I told the court I didn't have any desire to argue that point. But I have a right to argue there that 30th day on this instrument. Now, that has been in Kniveton's possession; it has not been in our possession, it hasn't been in that good woman's possession yonder where she could get it to use it but it has been in Kniveton's possession. This is the copy that he had; that bears the 30th day of June, 1937, ten days after that boy was killed over there. Yet Kniveton says this agreement was entered into—let me say one thing then I won't take but a little more of your time. This instrument here, gentlemen, was never recorded at all; never was; never was put on record. My recollection —now, I could be mistaken about that but my recollection is that Kniveton testified in his deposition that this instrument was recorded, and my recollection is he said this one; whether he did or whether he did not, that has never been recorded."

The 4th assignment is that there was no evidence in the record that the signature referred to by appellees' counsel was the signature of any person; that there was no evidence to show the signature was that of J. Clifton Kemp, a notary, and that there was no evidence that the date alluded to was June 30th. An examination of the record discloses that the evidence did raise the issue of the instrument having been duly executed, and that same was executed before J. Clifton Kemp, a notary public in and for Caddo Parish, Louisiana. The record further discloses that at the time counsel for appellees made the argument complained of, he voluntarily withdrew that part of his statement that the notary had put his name to the instrument then in controversy, and requested the court to instruct the jury not to consider same, which the court did, and the presumption is that they obeyed the order of the court and did not consider that portion of the argument. The remarks complained against, if improper, were not of such a nature that the instruction could not cure same. However, a complete answer to the assignment is that the bill of

exception itself recites that "despite anything in this bill above stated, there was evidence on the trial of said cause that J. Clifton Kemp was a Notary Public in and for Caddo Parish, Louisiana." Further, the question as to whether the instrument about which the argument was made had been executed on June 30, 1937, had strong support in the evidence that it was so executed. So the argument was proper.

■ Appellant presents its 6th to 18th assignments, inclusive, grouped. These assignments relate to several distinct and separate matters. They attempt to assert error in the submission of special issue No. 3 (had Bickham worked in the employment in which he was engaged on June 20, 1937, when he received his fatal injuries for substantially the whole of the year immediately preceding the date of his injuries); and special issue No. 4 (what amount of money did Bickham earn during the whole of the year immediately preceding the date of his injuries); and special issue No. 5 (what was the average weekly wage of Bickham for the year immediately preceding the date of his injuries); and special issue No. 6 (whether an employee of the same class as Bickham had worked substantially the whole of the year immediately preceding the date of Bickham's injuries); and special issue No. 7 (what was the average daily wage of an employee who had worked for substantially the whole of the year immediately preceding the date of Bickham's injuries). These issues were submitted over the objections of appellant, as follows:

"The cross-defendant objected to the submission of said special issues as follows:

"Cross-defendant objects and excepts to Special Issue No. 3 contained in the court's main charge as follows and for the following reasons:

"(a). Because there is no pleading that Ed B. Bickham worked in the employment in which he was engaged at the time of his fatal injuries for substantially the whole of the immediately preceding year;

"(b). Because the pleading is insufficient to support a finding by the jury that Ed B. Bickham worked in the employment in which he was engaged at the time of his fatal injuries for substantially the whole of the immediately preceding year;

"(c). Because there is no evidence that Ed B. Bickham worked in the employment in which he was engaged at the time of his fatal injuries for substantially the whole of the immediately preceding year;

"(d). Because the evidence is insufficient to support a finding of the jury that Ed B. Bickham worked in the employment in which he was engaged at the time of his fatal injuries for substantially the whole of the immediately preceding year;"

"Cross-defendant objects and excepts to the instruction immediately preceding Special Issue No. 4, reading: 'If you have answered Special Issue No. 3 Yes, and only in that event, you will answer Special Issue No. 4, next following,' as follows and for the following reasons:

"(a). Because same amounts to a conditional submission to the jury of Special Issue No. 4; that is, the jury is not permitted to answer Special Issue No. 4 unless they have first answered Special Issue No. 3 Yes, thereby depriving the defendant of a right to have Special Issue No. 4 answered unconditionally.

"Cross-defendant objects and excepts to the instruction immediately preceding Special Issue No. 5, reading as follows: 'If you have answered Special Issue No. 4 by stating any amount of money, and only in that event, you will answer Special Issue No. 5, next following,' as follows and for the following reasons:

"(a). Such instruction amounts to and is a conditional submission to the jury of Special Issue No. 5 and deprives the cross-defendant of the right to have the matters inquired about in said Special Issue No. 5 submitted to the jury unconditionally, to the prejudice of the cross-defendant;"

"Cross-defendant objects and excepts to Special Issue No. 6 contained in the Court's charge, as follows and for the following reasons:

"(a). Because there is no pleading to support the submission of such issue to the jury;

"(b) Because the pleading is insufficient to support the submission of such issue to the jury;"

"Cross-defendant objects and excepts to Special Issue No. 7 contained in the Court's charge, as follows and for the following reasons:

"(a). Because there is no pleading to support the submission of such issue to the jury;

"(b). Because there is no evidence to support the submission of such issue to the jury."

It is thus seen that the several assignments are duplicitous and multifarious—

grouping assignments pointing to separate and unrelated matters in violations of the rules controlling briefing of assignments of error. 3 Tex.Jur. p. 855, Sec. 597; Id. Sec. 614; Id. Sec. 616; Largent v. Etheridge, Tex.Civ.App., 13 S.W.2d 974; Parker v. Allison, Tex.Civ.App., 22 S.W.2d 338; Clevenger v. Burgess, Tex.Civ.App., 31 S. W.2d 675, writ refused; Traders' General Life Ins. Co. v. Powell, Tex.Civ.App., 44 S.W.2d 764, reversed on other grounds. Appellees object to our considering the assignments, and we think their objections should be sustained. However, in any event, the assignments do not show fundamental error, and the several findings by the jury in answer to the issues have ample support in the record.

Assignments 19 to 23, inclusive, relate to deceased Bickham working on Sundays. The jury answering special issue 9 found that Bickham did work on Sunday, and that the work done was a work of necessity, and in answer to No. 8, that his contract of hire obligated him to work seven days a week. It is first insisted that the evidence does not support the finding that the work performed by deceased on Sundays was a work of necessity. The undisputed evidence shows that Bickham's employer was engaged in drilling oil wells, and that Bickham was an experienced oil well driller. He had had years experience as such driller and had worked for Gray, his employer, in this capacity for several years, and was so working at the time he received his fatal injury. It is a matter of common knowledge that when oil wells are being drilled, the nature and difficulties of the work call for constant and unremittant operations, and that of necessity no stopping can be indulged unless unavoidable. The operations are thus forced to be continued day after day, unless by reason of unavoidable occurrences they are forced to cease. It is a kind of work generally recognized as one of "necessity" and so lawfully performed on Sunday. Maryland Casualty Co. v. Marshall, Tex.Civ.App., 14 S.W.2d 337, writ dismissed. Furthermore, while working on Sundays is forbidden by the penal statutes (Vernon's Ann. P.C. arts. 283, 284), unless the work done is one of necessity, still the question of whether work done was work of necessity is one of fact for the jury. Daniels v. Southern Surety Co., Tex.Civ.App., 40 S. W.2d 209, writ refused. Secondly, it is contended that the contract between Bickham and Gray required Bickham to work on Sunday, and so was against the penal statute, which rendered the contract void, and thus there being no contract of employment, appellees could not recover. This contention is without merit. Daniels v. Southern Surety Co., Tex.Civ.App., 40 S.W.2d 209; Carter Publications v. Davis, Tex.Civ.App., 68 S.W.2d 640. As stated above, working on Sunday is not penalized when the work done is one of necessity. That oil field worker's employment contract required continuous work seven days weekly does not show, as a matter of law, a violation of the statute forbidding working on the Sabbath, work of necessity not being limited to unavoidable physical necessity. Maryland Casualty Co. v. Garrett, Tex.Civ.App., 18 S.W.2d 1102, writ dismissed; Lloyds Casualty Co. of New York v. Grilliett, Tex.Civ. App., 64 S.W.2d 1005, writ refused.

Assignments 24 to 33, inclusive, presented grouped, complain that special issue No. 1 should not have been submitted to the jury. It reads: "Do you find from a preponderance of the evidence that Ed B. Bickham was an employee of W. G. Gray on the 20th day of June, 1937, at the time he sustained the fatal injuries?" It was answered "Yes." The pleadings of appellees and the evidence adduced raised the issue. It was properly submitted. Complaint is also made of the submission of special issue No. 2, which reads: "Do you find from a preponderance of the evidence in this case that the fatal injuries suffered by the said Ed B. Bickham were sustained by him while in the employment, if any, by the said W. G. Gray?" It was answered "Yes." It is insisted that this issue was (a) duplicitous; (b) too general; (c) no pleading to authorize its submission; (d) no evidence to warrant its submission; (e) evidence insufficient to support its submission; and (f) was on the weight of the evidence and assumed that Bickham was in the employment of W. G. Gray. None of the objections to the special issues were well taken. The pleadings and the evidence raised the issues and they were in proper form and properly submitted, and the evidence amply supported the jury's findings. While we have considered the matters complained in the assignments, they should not have been under the statutes and rules governing briefing of assignments of error. The several assignments, 24 to 33, inclusive, relate to separate and distinct matters, and so could not be grouped in presentation.

Assignments 34 and 35 assert that there was no evidence to justify the submission of the special issue relating to the payment of compensation in lump sum. The assignments are overruled. The pleadings were ample and the evidence supports the jury's findings.

Assignments 36, 37, and 38 complain that the charge of the court was conflicting and confusing as to the burden of proof, did not contain a guide with respect to the burden of proof, and was calculated to confuse the minds of the jurors as to where the burden of proof rested. These assignments are overruled. Each special issue submitted to the jury began: "Do you find from a preponderance of the evidence." This is the method recommended and approved by the supreme court. 41 Tex. Jur., p. 1194, Sec. 335; Texas Employers' Ins. Ass'n v. Finney, Tex.Civ.App., 45 S.W. 2d 298, writ refused; Federal Underwriters Exchange v. Bullard, Tex.Civ.App., 128 S.W.2d 126; Traders & Gen. Ins. Co. v. Huntsman, Tex.Civ.App., 125 S.W.2d 431, writ dismissed. Neither did the admonitory portions of the court's charge relating to the issues submitted constitute error. They were proper and timely. 41 Tex.Jur. p. 1186, Sec. 330; Speer's Special Issues, Sec. 145, p. 194; Id. Sec. 604, p. 790.

Assignments 39 and 40 urge that the court erred in not sustaining appellant's special exception to the allegation in appellees' petition that they were entitled to $20 per week compensation for 360 weeks because of the injuries and death of Ed B. Bickham, and that said compensation to which they were entitled amounted to $7,-200, and prayed for judgment in that amount. The grounds of the special exception to said pleading were that said allegations were merely conclusions on the part of the pleader, were questions of law and not of fact, were immaterial, irrelevant and highly prejudicial. To these exceptions, appellant has in its brief added a statement found in one of its bills of exceptions, that the court, over its objections, permitted counsel for appellees to read the pleadings excepted to (subdivision "d", paragraph 3, alleging appellees entitled to $20 weekly compensation) to be read to the jury to its prejudice. An inspection of the record (recitals in bill of exception No. 2) shows that subdivision "d" of paragraph 3 of appellees' first amended original answer and cross-action was not read to the jury. Appellant appealed this cause from an award of the Industrial Accident Board. Appellees answered and by cross-action sued for compensation, and set up the necessary facts to show jurisdiction in the trial court, and the necessary facts to entitle them to compensation. While it may not be necessary for the claimant to allege directly the amount involved in his claim before the board, yet it is considered the better practice to do so in a contest in the trial court hearing the matter on appeal. Beal v. Texas Indemnity Ins. Co., Tex.Com.App., 55 S.W.2d 801; 45 Tex.Jur. p. 805. The contention that the allegation of the weekly wage sought to be recovered was an allegation of law, is not sound. Traders' & General Life Ins. Co. v. Williams, Tex.Civ.App., 66 S.W. 2d 780. As in principle supporting this holding, see: Employers' Liability Assurance Corporation v. Sims, Tex.Civ.App., 67 S.W.2d 445. If the matter complained was error, it was harmless.

From what we have said, the judgment should be affirmed, and it is so ordered. Affirmed.