### DARLING v. PANHANDLE & SANTA FE RY. CO.
### No. 5836.

Court of Civil Appeals of Texas. Amarillo. Feb. 23, 1948.

Rehearing Denied March 29, 1948.

Smith, Cunningham & Boling, of Lubbock, for appellant.

Adkins, Pipkin, Madden & Adkins, of Amarillo, and Jack M. Randal, of Lubbock, and Terry, Cavin & Mills, of Galveston, for appellee.

PITTS, Chief Justice.

This is a suit for a declaratory judgment under the Texas Uniform Declaratory Judgment Act filed by Panhandle and Santa Fe Railway Company. It grew out of the execution of a release when a settlement was had between the parties as a result of injuries received by appellant, E. J. Darling, when he was employed as a locomotive fireman by appellee, while he was engaged within the scope of his employment on June 22, 1945, at which time he received injuries to his back and other parts of his body for which injuries he asserted liability claims against appellee. Appellee granted.

appellant a leave of absence from his duties and advanced money to him in order that he might procure medical attention. On November 26, 1945, a settlement was made by the appellant and Walter R. Irwin, general claim agent for appellee, as a result of which settlement appellant executed a release and signed the same in the presence of four witnesses, namely: Mrs. E. J. Darling, appellant's wife; J. W. Sossaman, appellant's father-in-law; Walter R. Irwin and W. A. Martin, the two latter witnesses being agents of appellee, all of whom heard all the negotiations at the time of the settlement. On or about April 10, 1946, appellant called Walter R. Irwin by long distance telephone from Lubbock and talked to him in Amarillo. During the telephone conversation appellant told Walter R. Irwin that he was not satisfied with the settlement previously made and told him either then or in a personal conversation the next day that he must have more money as a result of his injuries or he would file suit against appellee for additional damages as a result of his injuries. Appellee did not pay him any more money but soon thereafter on April 12, 1946, filed this suit against appellant pleading the contract of employment on the date of the claimed injuries, appellant's claimed injuries, advancements of money made by appellee to appellant, a final settlement made with appellant by appellee, the execution of a release by appellant, the terms of the release, appellant's threats to file an action against appellee to set aside the release and assert additional claims of liability and prayed for a declaratory judgment construing the terms of the release favorable to appellee and discharging it from further liability. The contents of the release in question are as follows:

## "Release In Full

"For the Sole and Only Consideration of Six Thousand Eight Hundred and No/100 Dollars ($6,800.00) the receipt of which is hereby acknowledged, I hereby release and forever discharge the Panhandle and Santa Fe Railway Company, its agents and employes, from any and all claims and demands which I now have or may hereafter have on account of any and all injuries, including any injuries which may hereafter develop as well as those now apparent, sustained by me at or near Muleshoe, Texas, on or about June 22, 1945, while I was employed by the said Panhandle and Santa Fe Railway Company as Locomotive Fireman and in the performance of my duties as such working with its Freight Train Extra 4095 East; including any and all expenses incurred by me, or that may hereafter be incurred by me, for any and all medical attention, hospitalization, etc., on account of or in any manner in connection with such injuries sustained by me as a result of accident of the above mentioned date, as well as any and all damages sustained by me by reason of the loss of or damage to personal effects, or otherwise, or for any other thing, whether mentioned herein or not. This settlement is made and release given without any promise or representation whatsoever upon the part of the said Panhandle and Santa Fe Railway Company or any of its officers, agents or employes, or demand by me, that employment of any kind or nature whatsoever will be given me in the future, or that I will be given or carried on leave of absence in the future, or that I will be given free transportation, or anything else, and it is expressly understood and agreed and I here state that the payment hereinabove recited is the sole and only consideration for this settlement and the execution and delivery by me of this release, it being intended by this settlement and release to fully, finally and completely release and forever discharge the said Panhandle and Santa Fe Railway Company, its agents and employes, of and from any and all claims, demands and causes of action of every nature or character whatsoever which I now have or may hereafter have or could assert against the said Railway Company by reason of any and all injuries sustained by me in and as a result of the accident above referred to and mentioned, or for any other loss or damage resulting from or in any manner whatsoever growing out of said accident. The amount of One Hundred and No/100 Dollars ($100.00) was paid to me, the said E. J. Darling, on September 25, 1945, by Draft No. 10636 of the Panhandle and Santa Fe Railway Company, and the amount of Two Hundred and No/100 Dollars ($200.00) was paid to me,

the said E. J. Darling, on November 12, 1945, by Draft No. 10651 of the Panhandle and Santa Fe Railway Company, or the total sum of Three Hundred and No/100 Dollars ($300.00), as advance payments on any settlement that might be made with me on account of the injuries sustained by me in and as a result of the above mentioned accident, the receipt of which is hereby acknowledged by me, and the balance of Six Thousand Five Hundred and No/100 Dollars ($6,500.00) of the total sum of Six Thousand Eight Hundred and No/100 Dollars ($6,800.00) this date agreed upon in full settlement and satisfaction of any and all claims I now have or may hereafter have on account of personal injuries, damage to personal effects, or anything else, sustained by me in or in any manner as the result of said accident above mentioned is this date paid to me by Draft No. 10936 of the Panhandle and Santa Fe Railway Company, the receipt of which is hereby acknowledged.

"In making this settlement I am not relying upon any statement made by any agent, or physician of said Railway Company as to what my injuries are, or how serious they are, or when or to what extent I may recover therefrom.

"It Is Definitely And Expressly Understood That In Making This Settlement No Promise Or Representation Whatsoever Is Or Has Been Made To Me Relative To Future Employment Or Any Other Thing.

" 'I have read the above release and I fully understand the same.'

"In Witness Whereof, I have hereunto set my hand and seal this 26th day of November A.D. 1945.

> (Signed) "E. J. Darling   (SEAL)
> (Signed) "Mrs. E. J. Darling
> (Signed) "J. D. Sossaman

Witness

> (Signed) "Walter R. Irwin
> (Signed) "W. A. Martin"

A photostatic copy of the release is in the record and the statement "I have read the above release and I understand the same" at the bottom of the release and just above the date line and signatures was written in long hand. According to the testimony of appellant, it was inserted by him in his own handwriting after he had examined the release and before he signed it.

Appellant answered with a plea to the jurisdiction of the court, a plea in abatement, certain exceptions, a general denial and other defensive pleas including pleas of fraud in procuring the settlement and release and he sought to set up in a cross action an additional claim of $88,200 for damages in tort. The trial court overruled his plea to the jurisdiction, plea in abatement, certain exceptions and upon appellee's motion struck out appellant's cross action for additional damages in tort holding in effect that the cross action was a separate suit within itself and not a defense to the cause of action pleaded by appellee but appellant was permitted to present as a defense his pleas of fraud in procuring the settlement and a release.

The case was heard by the trial court with a jury which found in response to special issues submitted to it: (1) That the parties entered into a written contract of settlement of a claim appellant had against appellee as a result of injuries appellant received on June 22, 1945; (2) That appellant had been fully informed as to his physical condition prior to the time the settlement was made; (3) That appellant selected and went to Doctor Key and Doctor D'Errico prior to the settlement for the purpose of learning the nature and extent of his injuries; (4) That appellant had been informed by Doctor Key and Doctor D'Errico of the nature of his injuries prior to the settlement; and (5) That appellant voluntarily entered into the contract of settlement and signed the release on November 26, 1945. Upon the findings of the jury the trial court entered its judgment to the effect that appellee was entitled to have a declaratory judgment as prayed for and that the release in question executed by appellant was in all things valid, effective and complete and that it fully and completely released and discharged appellee from any further claims of liability of any nature made or being threatened by appellant as a result of the injuries in question, from which judgment appellant perfected his appeal to this Court.

Appellant predicates his appeal upon seventeen points of error, all of which are directed to and complaining of the procedure had in the trial court. He does not direct any point of error or complain that the evidence is insufficient to support any of the jury's findings and a careful examination of the evidence reveals that the findings of the jury are each supported by evidence of probative force.

In his first point appellant complains of "The error of the court in denying the defendant the right to perfect bills of exceptions. (Assignments 14-17, 20, 22, 23, 25, 26, 27, 28, 31, 33, 35, 39, 41, 44, 48, TR. pp. 95-99)."

Appellant presents this and all other points as being germane to one or more assignments of error presented. Under the present rules of procedure points are an indispensable part of a brief on appeal. Because of some authorities hereinafter cited we call attention to the fact that it has been held that under the present rules "points" are synonymous with "propositions" or serve the purpose and perform the function of "an assignment of error" under the former practice. Wagley v. Fambrough, Tex. Civ.App., 163 S.W.2d 1072, affirmed 140 Tex. 577, 169 S.W.2d 478; Haskell Independent School Dist. v. Ferguson, Tex.Civ. App., 178 S.W.2d 130, and other authorities cited by these cases.

It has long been the policy of this Court to indulge a liberal construction in favor of the sufficiency of a brief and to give effect thereto if we can determine with some degree of certainty what a party is complaining about, and a Court of Civil Appeals is vested with discretion in considering points or assignments of error even if they are not presented in strict conformancy with the rules. But such courts are not expected to indulge such liberality as to consider points so multifarious and general as appellant has attempted to present in several of his purported points presented in his brief in this case.

In point number one appellant makes a broad general complaint and refers us to some nineteen different assignments of error dealing with as many different subjects. His argument thereunder is general and fails to point out any specific error but complains of several actions of the trial court.

A point or assignment of error is multifarious when it employs more than one specific ground of error or when it attempts to attack several distinct and alleged errors and rulings of the trial court. When it fails to point out definitely some alleged specific error or ruling of the court or fails to present some concrete question raised in the case it is too general and too indefinite to be considered provided it does not present fundamental error. Neither of the points hereinafter held to be multifarious or too general to be considered presents fundamental error but they each fail to point out specific and erroneous rulings of the court or to complain about concrete questions raised in the case. They are each therefore multifarious or too general or both for which reason or reasons they will not be considered by us. Point one is multifarious and too general to be considered. However, if point one were to be considered by us, a careful examination of the record reveals that appellant's claims therein stated are not sustained by the record. In support of our position in these matters we cite the following authorities: Butler v. Jenkins Oil Corporation, Tex.Civ. App., 68 S.W.2d 248, affirmed 128 Tex. 356, 97 S.W.2d 466; Sweatt v. Tarrant County, Tex.Civ.App., 108 S.W.2d 700; Kennedy v. McMullen, Tex.Civ.App., 39 S.W.2d 168; Central Power & Light Co. v. Heder, Tex.Civ.App., 133 S.W.2d 795; Traders & General Ins. Co. v. Davis, Tex. Civ.App., 147 S.W.2d 908; Universal Life Ins. Co. v. Wallace, Tex.Civ.App., 149 S.W. 2d 662; Hart v. Greis, Tex.Civ.App., 155 S.W.2d 997; Redman v. Cooper, Tex.Civ. App., 160 S.W.2d 318; Bell v. Stephenson, Tex.Civ.App., 187 S.W.2d 153; 3 Tex.Jur. 855, Sec. 597 and page 881, Sec. 614.

In point two appellant complains that the trial court erred in its failure to sustain his plea to the jurisdiction of the court for the reasons that the suit "is merely for the purpose of construing a contract about which there is no controversy except as to its validity"; that the petition presents no cause of action; that there are issues going "beyond the scope of the declaratory

judgment act" and that, if appellant prevails, another suit would be necessary.

The ultimate issue presented to the trial court was the question of the validity of the release in question signed by appellant for a consideration in the total sum of $6,-800 over which release a controversy had arisen between the parties, appellee contending the release was binding and appellant contending that it was not valid and binding as a result of which appellant was threatening to sue for an additional sum notwithstanding the provisions of the release.

The Uniform Declaratory Judgment Act of Texas (Article 2524—1, Sections 1 to 16, both inclusive, Vernon's Annotated Statutes) was passed in 1943. Section 1 of the Act provides that: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

Section 2 of the Act provides in part that: "Any person interested under a deed, * * * written contract, or writings constituting a contract * * * may have determined any question of construction or validity arising under the instrument * * * and obtain a declaration of rights, status, or other legal relations thereunder."

Section 3 of the Act provides that: "A contract may be construed either before or after there has been a breach thereof."

Under Section 8 the application for such relief must be by petition to a court having jurisdiction to grant the relief and further relief may be granted after judgment has been entered under the declaratory judgment act provided the judgment in such case warrants further relief.

Section 12 declares the purpose of the Act in the following language: "This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered."

The district court under Section 8 of Article V of the Constitution of Texas, Vernon's Ann.St. has jurisdiction: "Of all suits, complaints or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $500 exclusive of interest."

The constitutional provision is brought forward in Article 1906, Section 6, of the Revised Civil Statutes.

Under a reasonable construction of the above-statutory and constitutional provisions the trial court had jurisdiction of the subject matter since the consideration expressed in the release was $6,800 and we have found no authority to the contrary. Appellant's point number two is therefore overruled.

Appellant grouped points numbers three and four and attempts to present them together in his brief. The points as presented by appellant are as follows:

"Point Three: The error of the court in striking defendant's special answer and affirmative defense. (Assignments 6, 8, 9, 10, 12, 18, 21, 24, 27, 29, 32, 37, 40, 49-53, TR. pp. 93, 94, 95, 96, 97-99)."

"Point Four: The error of the court in striking defendant's cross action. (Assignments 7, 56-59, 61, TR. pp. 93, 99-100)."

In point number three appellant makes reference to "defendant's special answer" and "affirmative defense." The transcript does not disclose any pleadings designated as "defendant's special answer" or "defendant's affirmative defense." In appellant's joint discussion of his two points he mentions several defenses pleaded by him, one of which was fraud, and he charges that the trial court ordered his said defenses stricken from the record and did not permit him to offer evidence in support of the said defenses. Both the transcript and the statement of facts clearly show that appellant was permitted to present the issue of fraud as a defense to the procuring of a settlement and release from appellant by appellee. In point three appellant does not point out any particular error but he presents numerous complaints or charges

of error in said point. He does not attempt to separate his defense of fraud, which the record reveals he was permitted to present, from the several other claimed defenses about which he likewise complains. When we attempt to follow his argument and his citations to determine what he is complaining about we find he is making many complaints of error in one point. Under the authorities heretofore cited his point three is multifarious or too general to be considered on appeal. However if we were considering the complaints there presented no reversible errors were committed insofar as the record shows. But some pleadings referred to in the record and in the briefs are not found in the transcript or elsewhere in the record.

The matters about which appellant complains in points three and four relate or pertain distinctly to separate matters yet they are grouped together by appellant who attempts to brief them jointly. Point three complains about the trial court striking appellant's defenses which the record shows he set out in a different and separate pleading from that in which he pleaded his cross action, the striking of which he complains about in point four. Under the pleadings of his defenses he prayed for a "take nothing" judgment while he prayed for a judgment for damages under his cross action pleaded.

It has been held that assignments of error relating to separate and distinct matters should not be grouped for presentation in briefing a case. Federal Underwriters Exchange v. Bickham, Tex.Civ.App., 136 S.W.2d 880, affirmed 138 Tex. 128, 157 S.W.2d 356; and Traders & General Ins. Co. v. Scogin, Tex.Civ.App., 146 S.W.2d 1014. However because of our policy of liberally construing the rules with reference to briefing and because we have eliminated point three from our consideration for other reasons we will consider point four although it has been grouped with point three for briefing when it relates to a separate and distinct matter.

The transcript does not reflect all the pleadings and orders mentioned in the record and discussed in the briefs. It reflects an order of the trial court dated and filed on October 24, 1946, dismissing appellant's cross action without prejudice. This order appears to have been filed some months before any of the pleadings of appellant, as reflected by the transcript, were filed. The transcript likewise reflects two orders of the trial court one of which dated June 9, 1947, and another dated June 10, 1947, both of which reviewed to some extent the entire proceedings had in the case and referred to pleadings that are not found in the record. These orders likewise refer to pleadings that have been refiled by appellant in identical language as that previously used in pleadings previously filed and previously passed on by the trial court, which former pleadings and orders of the trial court are not found in the transcript or in the record. One such pleading referred to by the trial court was appellant's former cross action which the trial court says had been previously stricken and has subsequently thereto been refiled in identical language and the same has been again stricken and dismissed by the trial court in accordance with his order previously entered neither of which is reflected by the record. Appellant complains in his fourth point that the action of the trial court in striking his cross action was error. Appellant's cross action found in his sixth amended original answer sets up an action in tort against appellee and prayed for additional damages in the sum of $88,200. The ultimate issue raised by the pending declaratory judgment action filed by appellee was the validity of the release in question. Appellant was permitted to attack the validity and effect of the release under his general denial and pleas of fraud. The alleged tort action and the evidence that would have been necessarily offered to show how appellant received his injuries, whether or not appellee was negligent, the amount of damages, if any, appellant would be entitled to would in no way rebut as a defense the ultimate issue raised by the pending declaratory judgment action filed by appellee to determine if the release in question was valid. The action in tort was wholly unrelated to the original action filed. It would have taken one set of pleadings, evidence, and issues to establish a result in the tort action and another and different set of pleadings, evidence and issues to establish a result in the declara-

tory judgment action. As a result it would have been two actions not related to each other on trial together and at the same time. Such would have led to confusion. The question here raised is one of remedies involving two separate actions and two separate remedies and the trial court was required to grant relief in accordance with the relative substantive rights of the parties. At the time the declaratory judgment proceeding was filed appellant had no right to cross action for further damages to assert, since he had theretofore settled with appellee for all damages that had accrued as a result of his injuries and he had executed a written release relieving appellee from paying any further damages. Such was the status of the parties until and unless the release was held void, invalid and set aside. At the time appellant filed his cross action and sought to plead and try his tort action in the declaratory judgment suit, he then had no right of action in tort since any and all such rights had been extinguished by the release he had executed and he could not have had an action in tort until the release had been held void, invalid and set aside. Therefore appellant was in no position to insist upon the prosecution of a cause of action he did not then have and one that was wholly unrelated to the subject matter filed by appellee and then pending before the court.

The case of Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, cited and relied on by appellant holds that an action for declaratory judgment is neither legal nor equitable but sui generis. It further holds that such a proceeding is an additional remedy intended as a speedy and effective one to determine the rights of the parties when a controversy has arisen and it may be resorted to even before a wrong has actually been committed. We fail to see wherein this case lends any comfort to appellant's position in the instant case.

■ It appears to us that the trial court should have some discretion in passing upon such a matter and that his disposition of such a matter should not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion. Under the record in this case and according to the law and the rules of procedure it appears to us that the trial court did not abuse its discretion in striking and dismissing appellant's cross action. His point number four is therefore overruled.

■ Appellant's point number five is as follows:

"The error of the court in denying defendant the right to plead and prove fraud, failure of consideration, partial failure of consideration and mutual mistake. (Assignments 6, 16, 92, 96, 97, 98, TR., pp. 93, 95, 103, 104)." Point number five is in part the same complaints made by appellant in point number three which point has already been held to be multifarious and too general to be considered. As heretofore stated in discussing point number three the transcript and statement of facts reflect that the trial court permitted appellant to present his pleas of fraud as a defense. It is not always easy to prove actionable fraud. In order to prove such the accuser assumes the burden of proving that material misrepresentations have been knowingly or recklessly made by the party accused, with the intention that such misrepresentations should be acted upon by the accuser or the opposing party, who acted or relied upon such misrepresentations and suffered injuries thereby. The record reveals that the evidence offered by appellant to establish his pleas of fraud was meager; however, the record further reveals that the trial court did permit the appellant to present his pleas of fraud as a defense to the action filed by appellee. In point five appellant makes a blanket general charge of a number of errors, but nowhere does he point out any particular error made by the trial court. The point shows on its face that it is multifarious and too general to be considered.

Points six, seven, and eight have been grouped together by appellant for briefing purposes. They are as follows:

"Point Six: The error of the court in overruling defendant's objections to the court's charge. (Assignments 79, 80, 81, 82, 83, 117, TR. pp. 102, 107)."

"Point Seven: The error of the court in rejecting the defendant's requested charges. (Assignments 64-66, TR. p. 100)."

"Point Eight: The error of the court in refusing to give defendant's requested issues. (Assignments 67-78, TR. pp. 100-101)."

Following a statement of the said points we find the following language used by appellant in his brief:

"Statement Under Points Six, Seven And Eight: The defendant leveled numerous objections to the court's charge (TR.61), and specially requested three separate charges (TR. 67, 68, 69), and requested twelve special issues (TR. 70-81). Each of which was denied and overruled."

Each of the said points complains about more than one act of the trial court and shows on its face that it is multifarious and too general to be considered. Appellant's statement made following a restatement of the said points and hereinabove quoted certainly proves them to be multifarious and too general to be considered. Under the authorities hereinabove cited, the subject matter presented in points seven and eight may be closely enough related to brief them together, but the subject matter presented in point six is not closely enough related to that presented in points seven and eight to be properly briefed together with them. For this additional reason the said points should not be considered.

Appellant complains in points nine and ten that the trial court erred in refusing him the right to show the extent of his injuries and the measure of his damages.

In a declaratory judgment action such as this the nature and extent of appellant's injuries were material only for the purpose of showing his knowledge of them at the time he entered into the settlement agreement and executed the release in question. No legal measure of damages was involved in the matter of making the settlement or the execution of the release and none is involved in this proceeding since appellant's cross action has been stricken.

The record reveals that appellant voluntarily went to Doctor Key who examined him and advised him of the nature and extent of his injuries prior to the settlement and sent him to Dr. Albert D'Errico at Dallas for further examination. Doctor D'Errico examined the appellant and advised him of the nature and extent of his injuries prior to the settlement. The jury found in answer to special issue number three that appellant "selected and went to Doctor Key and Doctor D'Errico for the purpose of learning the nature and extent of his injury prior to November 26, 1945," the date of the settlement, and the jury found in answer to special issue number four that the said doctors informed appellant of the nature of his injuries prior to the date of the settlement. There is evidence of probative force to support such findings of the jury and nowhere does appellant direct any point of error or complaint that such findings are without support. The record likewise shows that the settlement made between the parties was based upon the examinations and reports of Doctor Key and Doctor D'Errico whom the jury found were the doctors selected by appellant to examine him. Appellant's points nine and ten are therefore overruled.

Appellant complains in point eleven that the trial court erred in refusing to permit him to exhibit X-ray pictures to the jury after the same had been properly identified.

The X-ray pictures were attached to the deposition of Dr. Olan Key who did not testify in person but whose deposition was introduced in part. Doctor Key's testimony was admitted and read to the jury showing fully appellant's physical condition as reflected by the X-ray pictures. Other medical testimony was admitted by deposition but no medical doctor testified in person. The record reveals that the trial court told appellant's counsel that it would permit the introduction of all the medical testimony concerning the X-ray pictures, which pictures may be exhibited to the jury if he would bring in any medical doctor to explain them to the court and jury; otherwise the trial court said he did not see any necessity in exhibiting the X rays. No medical doctor was brought in to explain them to the court and jury and they were not exhibited to the jury. If such action by the trial court was error it was a harmless error in our opinion and appellant's point eleven is therefore overruled.

Appellant presents points twelve, thirteen, fourteen, and fifteen and grouped

them together for our consideration in briefing them. They are as follows:

"Point Twelve: The error of the court in holding that Doctor Key was defendant's doctor. (Assignment 108, TR. p. 106)."

"Point Thirteen: The error of the court in refusing to permit defendant to show that Doctor Schulkey and the Santa Fe hospital were under the control of Plaintiff. (Assignments 88, 89, 90, TR. p. 103)."

"Point Fourteen: The error of the court in holding that Doctor D'Errico was defendant's doctor as a matter of law. (Assignment 108, TR. p. 106)."

"Point Fifteen: The error of the court in refusing testimony offered to establish the Plaintiff's system and scheme to defraud the defendant. (Assignments 38, 43, 45, 47, 55, 60, TR. pp. 98, 99)."

■ These points present separate and distinct matters that are not in any way related and should not be considered for reasons heretofore stated. Point number fifteen is multifarious and too general to be considered since it refers to several different charges of error. In view of our liberal policy heretofore mentioned points numbers twelve, thirteen, and fourteen will be considered although they are not related to each other.

■ The record reveals that Dr. Olan Key had been appellant's family physician before his injury and that he voluntarily went to Doctor Key for examination of his own accord and upon the recommendation of his wife and his father-in-law. Doctor Key testified that he had no connection whatever with appellee or any of its hospitals. The jury found that appellant selected both Doctor Key and Doctor D'Errico and went to them for his examinations. The record shows that Doctor Key sent appellant to Doctor D'Errico for further examination and that Doctor D'Errico testified he was not connected in any way with appellee or any of its hospitals. The testimony of these doctors were in no way contradicted. The record further shows that Doctor Schulkey was connected with the Santa Fe Hospital at San Angelo, Texas, and that the said doctor examined appellant prior to his examinations by Doctor Key and Doctor D'Errico. Doctor Schulkey did not testify at the trial and there is no evidence that he had anything to do with the settlement between the parties or the execution of the release in question. On the contrary the record shows that the settlement between the parties was based upon and made as a result of the examinations of Doctor Key and Doctor D'Errico whom the jury found were selected by appellant himself for such examinations. Appellant's points twelve, thirteen and fourteen are all therefore overruled.

■ Appellant complains in point sixteen that the trial court erred in sustaining appellee's special exceptions and general demurrer to appellant's sixth amended original answer and cross action. Point sixteen is multifarious and a general charge involving several complaints most, if not all of which, have already been hereinabove disposed of. The record does not reflect the filing of a general demurrer by either party. It reflects the filing of a third supplemental petition by appellee containing motions to strike out appellant's plea to the jurisdiction, plea in abatement, and cross action because they had each been previously pleaded and previously stricken by the court, which former pleadings referred to and former orders mentioned are not reflected by the transcript. However, it seems other such pleadings had been subsequently refiled and they have been hereinabove passed on and disposed of by us. Appellant complains in this point about the trial court striking the plea to the jurisdiction and his cross action and in addition thereto he complains in the same point because the trial court sustained a number of exceptions to his pleadings, all of which make the said point multifarious and too general to be considered. Yet, if we were required to consider these complaints made in one point, we find from the record that such exceptions refer to pleadings concerning appellant's action in tort, expressing an opinion or they were prejudicial and had no bearing on the issues on trial before the court. We have already held that the trial court had jurisdiction and that appellant's action in tort had no place in this suit pleaded as a defense in a declaratory judgments case. A release such as the one in question here

is a bar to any right of action growing out of the obligation which is discharged by it. Chouquette v. McCarthy, Tex.Civ. App., 56 S.W. 956, writ refused. Such a rule will certainly prevail until the release is set aside. This rule is likewise supported by the case of McClure v. Fall, Tex.Com. App., 67 S.W.2d 231. In making a settlement such as the parties here made, they each take the chance of future developments that might change conditions. They each took chances, one of paying more than an adequate compensation for the wrong inflicted, and the other of receiving less, as was stated by the Supreme Court in a similar action in the case of Houston & T. C. R. Co. v. McCarty, 94 Tex. 298, 60 S.W. 429, 52 L.R.A. 293, 86 Am.St.Rep. 835. We therefore feel that appellant's complaints made in point sixteen are not supported by the record if it be our duty to pass on this point.

Appellant finally complains in point seventeen that the trial court erred in refusing to grant him a mistrial because appellee offered in evidence certain medical reports.

■ The record reveals that appellee's counsel said before the court and jury: "This is a document the Plaintiff was required to file on motion of the Defendant, and has been on file for a long period here in this court." He then offered "in evidence the medical reports—" when opposing counsel objected on the ground that it was "self-serving and hearsay as to this defendant and constitutes secondary evidence." The jury was ordered to stand aside. In the absence of the jury the medical reports were examined by the trial court. Appellant asked the trial court to strike the statement from the record. Appellant likewise asked the court in the absence of the jury for a mistrial. Upon the return of the jury the trial court instructed them as follows: "Now, Gentlemen of the Jury, the court is excluding this report for reasons better known to the court, and you will not consider the remark of counsel in saying he was introducing a medical report for it serves no purpose in this case." The contents of the reports were never made known to the jury. It is presumed the jury followed the instruction of the trial court. At any rate, no prejudicial er-

ror has been shown in this matter such as would have justified a mistrial and appellant's point seventeen is therefore overruled.

■ We have carefully examined the lengthy record in this case as well as the briefs of the parties. We have endeavored with some degree of difficulty, in some instances, to determine what appellant's complaints of error were about. Many of them were too general and not made clear. We can deal only with the record as it is presented to us and with the complaints made as best we can determine them to be. It is presumed that a case has been correctly tried by the trial court until the complaining party has presented under the rules of procedure one or more errors showing the contrary. Such alleged errors should be clearly and consistently presented in compliance with the rules of procedure.

Our examination of the record fails to reveal any reversible error and the judgment of the trial court is therefore affirmed.