**JOHNSON–SAMPSON CONSTRUCTION COMPANY, Inc., Appellant,**

v.

**W & W WATERPROOFING COMPANY, Inc., Appellee.**

No. 6347.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 7, 1953.

Rehearing Denied Jan. 4, 1954.

Storey, Armstrong & Steger, Dallas, for appellant.

J. E. Abernathy, McKinney, for appellee.

PITTS, Chief Justice.

This is a suit for recovery under the terms of a contract. Appellee, W & W Waterproofing Company, a corporation, filed suit against appellant, Johnson-Sampson Construction Company, a corporation, for the balance of $1,632 due under the terms of a contract between the parties, which terms were expressed in telegrams that passed between them, whereby appellant employed appellee, at a stipulated price therein expressed, to repair and seal certain leaks in a grain elevator, which had been previously built by appellant but was owned by Frisco Grain Company in Frisco, Collin County, Texas. In its first amended original answer and cross action appellant denied that appellee completed the work according to the terms of the contract but admitted the exchange of three telegrams between the parties which telegrams constituted the contract. Appellant further alleged that because of appellee's failure to complete the work according to the terms of the contract, it breached the terms thereof, for which reason appellant, in a cross action filed, sued appellee for the sum of $1,432.21, together with $500 appellant had already paid to appellee on the job.

The case was tried to a jury which found that appellee had performed its part of the contract according to its terms and judgment was therefore accordingly rendered for appellee for the sum of $1,632, together with lawful interest thereon and appellant was denied any recovery on its cross action. Appellant perfected an appeal to the Dallas Court of Civil Appeals of the Fifth Supreme Judicial District and the same was transferred to this Court by the Supreme Court in equalizing the dockets.

In its first and fourth points appellant charges the trial court erred in its refusal to sustain its motions, respectively, for peremptory instruction and for judgment non obstante veredicto. Appellee has challenged appellant's first point, that is, its alleged grounds for peremptory instruction therein stated, for the alleged reason there is an inconsistency between the grounds stated by appellant in point one and the grounds previously stated in its motion for peremptory instruction, for which reason appellee contends that such point should not be considered by this Court. An examination of the record reveals there is some merit to appellee's challenge. The record clearly reveals that the terms of the contract between the parties is contained in three telegrams that passed between them as pleaded by both parties. The first telegram was sent by appellee to appellant on May 18, 1951, making a proposal to do the work in question, which work was there detailed; appellant replied thereto on the morning of May 19, 1951, accepting appellee's proposal with a slight change therein proposed; the latter was accepted and confirmed by appellee in the afternoon of May 19, 1951. In its motion for a peremptory instruction appellant says in part, in support of its motion, that "The written contract sued upon as contained in the three telegrams is uncontroverted". In both its pleadings filed and in the said motion appellant stands upon the contract as reflected by the three telegrams and contends, in effect, in its said motion that the terms of the contract, as a matter of law, have been breached by appellee. Whereas in its first point appellant charges that its

motion for peremptory instruction should have been sustained by the trial court "because appellant's telegram of May 19, 1951, constituted a rejection of the original proposal by appellee and amounted to a counter offer which was accepted by appellee". It therefore appears that in its motion for peremptory instruction presented by appellant after the evidence closed and before the case was submitted to the jury, appellant approved and relied upon appellee's proposal by telegram to do the work with slight amendments made thereto. However, after the jury rendered its verdict against appellant, it now seeks to change its position and contends that appellant, by its telegram sent to appellee on May 19, 1951, rejected appellee's original offer and made a counter offer which appellee accepted, thus contending now that the contract is based solely upon the last two telegrams exchanged between the parties and not upon all three telegrams as contended previously in its said motion as well as in its pleadings. There is no pleading to support appellant's contention now made that the contract is based only upon a counter offer and acceptance.

 Such an inconsistency does not furnish a sound basis for a proper point of error. But, be that as it may, appellant further contends in its said point one that the uncontroverted evidence reveals that appellee did not comply with the terms of the contract. Such a contention is contrary to the jury finding. If there be any evidence of probative force to support the jury finding, both appellant and this Court are bound thereby. It is elementary law that in testing the sufficiency of the evidence to determine if it will support a jury finding, we must give credence only to the evidence and circumstances favorable to the jury finding and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold such finding.

In examining the evidence in accordance with such rules, we find that B. L. Weaver, Sr., testified that he was a partner in appellee's corporation, and the person who negotiated the contract in question for appellee and that he supervised the labor in question. He further testified that his original price proposed for doing the labor was $1,997 and that appellant accepted his proposal with a suggested change of $2,132 as the consideration with the difference of $135 being added to appellee's proposal to be used by appellee in paying for the expenses of three men while on the job, which suggested change appellee approved by his last telegram sent. His testimony in this respect is supported by the contents of the three telegrams. The only material change made in appellee's orginal proposal was that appellee should pay for the expenses of the three men on the job and add such amount to his original proposed consideration rather than to leave the payment of the expenses of the three men to appellant. Weaver further testified in detail about how and when the work was done in accordance with the terms of the contract, when the work was completed, how the former leaks in the elevator were tested and found to be corrected, how the completion of the job was accepted and approved by both Sherman H. Sampson, appellant's secretary who "run the field" and H. M. Eaton, manager of Frisco Grain Company. B. L. Weaver, Sr., further testified that Sherman H. Sampson paid him $500 on the job two days after it' was completed and promised then to mail him a check for the balance due but such balance due in the sum of $1,632 had not been paid and he had been notified that the same would not be paid. Weaver likewise testified that he had guaranteed his work as stated in the contract; that about twenty-five days after the work had been completed, he was notified there was a leak by reason of water rising between two concrete walls in the elevator, the said walls were 8 or 10 inches thick, and then penetrating down into the bottom pit of the elevator, which pit the evidence reveals was underground; that no other defects of his work had been reported to him; and that he guaranteed his work and would still stand behind the same and correct any defects found.

929

B. L. Weaver, Jr., son of the former witness mentioned, was likewise a partner in appellee's company. He participated in the negotiations, the work done, its inspection and approval after completion and the discussion of settlement. His testimony corroborated that given by his father.

The testimony of B. L. Weaver, Sr., is also corroborated in part by the testimony of P. B. Roberts, superintendent of Frisco Grain Company, in part by the testimony of H. M. Eaton, manager of Frisco Grain Company, and in part by the testimony of Sherman H. Sampson, secretary of appellant's company, who testified in particular about the change in the original consideration from $1,997 to $2,132 and therein corroborated the testimony of B. L. Weaver, Sr., concerning such a change.

It is our opinion there is ample testimony of probative force to support the jury finding and the trial court's judgment based thereon. Such being true, the trial court properly overruled appellant's motion for peremptory instruction and likewise properly overruled its motion for judgment non obstante veredicto, about which appellant complains in its fourth point.

Appellant further complains in point two about the form of the trial court's charge, wherein it appears that the court properly defined "preponderance of the evidence", properly stated that the contract consisted of the agreement of the parties as reflected by the contents of the telegrams that passed between them, and then submitted the controlling question pleaded by the parties, respectively, appellee pleading the question submitted affirmatively and appellant pleading it negatively, but the trial court properly placed the burden of proof upon appellee by submitting the issue in the following language:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that plaintiff, W & W Waterproofing Company, performed its part of the contract between it and the defendant, Johnson-Sampson Construc-

tion Company, Inc., for the waterproofing of the elevator of the Frisco Grain Company?

"Answer 'It did' or 'It did not'.

"Answer: *It did*".

The court likewise submitted another issue, concerning appellee's liability to appellant, based upon appellant's cross action, to be answered only in the event that the jury found appellee did not perform its part of the contract. As a result of the jury's first finding heretofore stated, the second issue required no answer and none was given.

Under the pleadings presented and the evidence heard, we find no fault with the form of the court's charge. Appellant's complaints to the contrary are overruled.

In its point three appellant charges error because the trial court refused to submit to the jury any of its eleven requested Special Issues. Appellant sets forth the said requested Issues and attempts to brief generally all of the questions there raised in two pages of its brief. Appellant's first Special Requested Issue makes the following inquiry:

"Do you find and believe from a preponderance of the evidence that the Plaintiff failed to comply with the terms of the contract sued upon?"

This issue presents the controlling question raised by the pleadings of both parties and by the evidence, but the trial court refused its submission because the same question was affirmatively asked the jury in different language in Special Issue No. 1 presented and previously herein discussed. Appellant here complains because this requested Issue was not submitted to the jury, however, it likewise previously complains about the affirmative submission of the same Issue in different language by the trial court.

Appellant's other ten Requested Special Issues inquire about various separate and sundry matters in one point. The said Special Requested Issues were separately presented to the trial judge and separately considered and refused by him. Un-

der our present Rules of Procedure a point of error is an indispensable part of a brief on appeal. Yet a point or assignment of error is multifarious when it embraces more than one specific ground of error or when it attempts in the one point to attack several distinct and separate rulings of the trial court. Appellant has sought here to complain in one point in a general way about all of the matters set out in its eleven Special Requested Issues, thus making its point multifarious and too general to be considered on appeal since no fundamental error is presented. Lofland v. Jackson, Tex.Civ.App., 237 S.W.2d 785; Darling v. Panhandle & Santa Fe Ry. Co., Tex.Civ. App., 209 S.W.2d 660; Hudspeth v. Hudspeth, Tex.Civ.App., 206 S.W.2d 863, and other authorities cited in these cases.

It has long been the policy of this Court to indulge a liberal construction in favor of the sufficiency of a brief and give effect thereto if we can do so without having to separate the several complaints made in one point and brief them separately ourselves. No such liberality of construction is contemplated by the Rules of Procedure governing such matters. The separate and distinct matters appellant has sought to have us pass on in its third point are multifarious and too general and should not be considered on appeal in any event. However, if such matters were to be considered, a careful examination of each of them, together with the record in the case, fails to reveal any reversible error in any event.

Appellant further charges error because of testimony given by B. L. Weaver, Sr., concerning somebody pointing out to him leaks in the elevator before the work was begun and because of the testimony of P. B. Roberts, superintendent of Frisco Grain Company, concerning the completion of the work in question by appellee on June 1, 1951, and how he (Roberts) examined the work and tested it for two days thereafter to see if the leaks had been stopped. We find no reversible error committed as a result of the admission of such testimony. Appellant's complaints to the contrary are overruled.

A careful examination of the briefs and the record reveals no reversible error committed. Appellant's points are all overruled and the judgment of the trial court is affirmed.