**PANHANDLE & SANTA FE RAILWAY COMPANY, Appellant,**

v.

**R. D. WALKER and Texas Employers' Insurance Association, Appellees.**

**No. 7172.**

Court of Civil Appeals of Texas.

Amarillo.

Jan. 7, 1963.

Rehearing Denied Feb. 4, 1963.

Lewis Jeffrey, Simpson, Adkins, Fullingim & Hankins, Amarillo, McLeod, Mills, Shirley & Alexander, Galveston, for appellant.

Merchant, Fitzjarrald, Poole & Merchant, Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellees.

CHAPMAN, Justice.

This opinion is in lieu of our opinion announced on November 12, 1962.

This is an appeal by Panhandle & Santa Fe Railway Company from a jury verdict in favor of R. D. Walker and intervenor, Texas Employers' Insurance Association. Mr. Walker will hereinafter be referred to by his name, or as appellee, and the Association as intervenor. Panhandle & Santa Fe Railway Company will be variously referred to as Santa Fe, appellant, or the railway company.

On September 7, 1960, appellee was and had been since March of that year working

as a materials checker for Kellogg Construction Company. The latter will be hereinafter referred to as Kellogg or the construction company.

Kellogg was engaged in construction work for Phillips Petroleum Company. Large quantities of materials for construction were shipped in to Kellogg by rail. The railroad cars with Kellogg construction materials were parked on the tracks inside the enclosure of Phillips Refinery at Phillips, Texas. On the occasion of appellee's alleged injury, he was checking materials for Kellogg in a boxcar on the tracks mentioned when Santa Fe coupled its engine onto the east boxcar of a group of five connecting cars. Appellee was working in one of those cars. Kellogg had requested Santa Fe to move one of the cars to another track and had not advised appellant there was anyone working in one of them. Appellee alleged that while checking materials in the boxcar " * * * defendant, with great force and violence, drove one of its trains into the car in which the plaintiff was working throwing him from a stack of material to the floor of said car causing him serious and permanent bodily injuries to his head, neck, left shoulder, and upper portion of his back." He alleged he had suffered intense pain and disability since September 7, 1960, and would continue to suffer pain and disability for an indefinite time, even throughout the balance of his lifetime. He asked for one hundred twenty-five thousand dollars ($125,000) damages and the jury gave him fifteen thousand dollars ($15,000).

Prior to the filing of the instant case, appellee had settled a workman's compensation case with intervenor, insurance carrier for Kellogg, for one thousand five hundred sixty dollars ($1,560) plus the hospital bill and some of the medical bills in the

amount of nine hundred thirty-nine dollars and seventy cents ($939.70) growing out of the same alleged injury. The record shows on page 79 of the Statement of Facts that appellee at the time of the trial still owed one of the treating doctors approximately twelve hundred dollars ($1,200), none of which had been paid by intervenor.[1] Judgment was rendered for appellee against Santa Fe for twelve thousand five hundred dollars and thirty cents ($12,500.30) and for intervenor for two thousand four hundred ninety-nine dollars and seventy cents ($2,499.70). It is from such judgment appeal is perfected upon twelve points of error.

■ In its first point appellant attacks the action of the trial court in allowing, over its objections, appellee's counsel, while interrogating witnesses, to require them to answer (1) whether it or its employees furnished blue flags or other safety equipment to plaintiff; (2) whether they furnished blue flags or other safety equipment to other Kellogg employees; (3) whether it gave any safety instructions or cautions to Kellogg employees; (4) in overruling its motion to withdraw all such evidence; (5) in failing to give defendant's requested charge No. 1 limiting the extent of defendant's duty; and (6) "overruling Amended Motion for New Trial complaining of such overrulings."

Appellee insists the point is multifarious in that it deals with rulings made separately during the examination of a number of witnesses, with the refusal of the court to give a requested instruction limiting appellant's liability, and also injects in its argument under the point complaints with respect to argument of Walker's counsel. Though the point is probably multifarious[2] we are able to determine that appellant is complain-

---

1. We cite the page in the Statement of Facts because we have been challenged by Motion for Rehearing on this statement.

2. Johnson-Sampson Construction Company v. W & W Waterproofing Company,

Tex.Civ.App., 274 S.W.2d 926 (NRE); Lofland v. Jackson et al., Tex.Civ.App., 237 S.W.2d 785 (NRE); Darling v. Panhandle & Santa Fe Ry. Co., Tex.Civ. App., 209 S.W.2d 660 (NRE); Hudspeth v. Hudspeth, Tex.Civ.App., 206 S.W.2d 863 (NWH).

ing of questions asked by appellee's counsel and evidence allowed by the court concerning whether appellant furnished flags or other safety devices to Kellogg or its employees working in the railroad cars. Since this court has always been very liberal in writing on multifarious issues where we can tell from the wording of the point what the aggrieved party is complaining about, we shall discuss the point fully.

It should be noted that appellant pleaded negligence of appellee in failing to place a flag or some other safety device to warn of his presence in the car and alleged negligence in the failure of Kellogg to furnish its employees flags to place on the cars to warn of the presence of workmen. It then alleged such negligence of Kellogg was the sole proximate cause of the injuries suffered by appellee. The jury found Kellogg was negligent in failing to furnish appellee flags of some character to place on the end of the car in which he was working to warn of his presence but found that such negligence was not the sole proximate cause of his injuries.

Appellee alleged three grounds of negligence against appellant, (1) in failing to keep a proper lookout, (2) in failing to warn appellee it was going to strike the boxcar, and (3) in striking the car without ascertaining if anyone was in it.

In our previous opinions we stated that the oral argument was not brought forward in the record. It now develops that the record of such argument had been mistakenly sent to the Supreme Court in another record. Prior to this court's knowledge of that fact, we had overruled per curiam the Motion for Rehearing but had not announced such action. Since the record of argument has been returned, we have read it carefully and have determined that no objections were made to the argument during the trial of the case whereby the court would have had an opportunity to instruct the jury not to consider it if he had considered it improper. Additionally, we believe from this record as a whole that the argument was

harmless under Rule 434. We must now consider the ruling of the court concerning questions by appellees' counsel to a number of witnesses and their answers thereto as to whether Santa Fe furnished flags or other safety devices to appellee to make known his presence in the boxcar.

In the first place recovery does not turn in any particular upon a finding of Santa Fe negligence in the mattter of blue flags. Secondly, whether the testimony was admissible was a matter of relevancy, and it seems clearly to have been made relevant and material both by appellant's allegations and by the testimony it offered. Santa Fe alleged Walker was negligent in not placing a blue flag to make known his presence in the car and questioned another Kellogg witness working in the same boxcar if he used any character of flag or warning device to warn of his presence in the car. The fact of negligence was to be determined by applying the standard of a prudent person. The circumstances that no one—Kellogg, Santa Fe, or anyone else—ever suggested to him the use of a blue flag seems worthy to be considered by the jury in support of Walker's contention that he was not negligent in that regard. In 23 T.J.2d 178, Sec. 124, Evidence, it has been textually stated:

"There is no precise or universal test for determining whether proffered evidence is relevant and material. As a general rule, however, it may properly be said that evidence will be deemed to be relevant and material if it tends to prove or disprove any fact in issue, or if it is capable of affording any reasonable presumption or inference as to the principle matter in dispute. In other words, there must be some logical connection, either directly or inferentially, between the evidence or facts offered and the facts in issue that will make the former relevant to the latter."

The general principle just enunciated has been applied a number of times by our Supreme Court. Pittman v. Baladez, 158 Tex.

372, 312 S.W.2d 210; Weaver v. Benson, 152 Tex. 50, 254 S.W.2d 95; Dallas Railway & Terminal Company v. Oehler, 156 Tex. 488, 296 S.W.2d 757.

We agree the trial court should not have permitted counsel to lecture one of the witnesses about not telling him certain acts were not their duty or the railway company's duty, but under this record we do not consider the conduct constitutes reversible error.

As stated in our original opinion, the cases cited by appellant on the alleged errors asserted in this point are not applicable to the facts of our case. For example, a number of them are cases in which the injury was attributable to the action or omission of either the plaintiff or his employer and not in the act or omission of the defendant.[3]

The court simply held in that line of cases that a defendant which has not brought about the injury is under no duty to protect against his own unsafe practices. In the instant case it was the defendant who brought about the alleged injury. Furthermore, the Bell case cited in footnote 3 as a "writ refused" case and quoted from in appellant's brief was not a case with that writ history at all but was refused for want of merit on the ground that plaintiff Bell was defendant's employee. Bell v. Humble Oil & Refining Co., 142 Tex. 645, 181 S.W.2d 569.

Additionally, whether there existed a duty of Santa Fe on the blue flag question depended upon the railway company's ability to have foreseen and prevented the alleged injury. Houston Lighting & Power Company v. Brooks, 161 Tex. 32, 336 S.W.2d 603; Rudes v. Gottschalk, 159 Tex. 552, 324 S.W.2d 201.

We, of course, agree with appellant that Santa Fe was obligated to use only ordinary care in coupling onto the boxcars but what constituted that degree of care depended upon the circumstances of this particular case. Therefore, we think it well to review the situation existing at the time the boxcars were coupled onto in order to show the knowledge on the part of Santa Fe that should have suggested someone might have been working in the boxcar and as a guide for the jury to determine if Santa Fe used ordinary care in keeping a proper lookout.

By deposition, Santa Fe's engine foreman, Mr. Sharp, testified there was a blue flag that belonged in each of the tracks, but that over the months Kellogg had been on the construction it had not used them. He testified he was in charge of the particular switching movement.

C. S. Turner, Santa Fe yardmaster, determined how the cars were to be moved and what precautions were to be taken; he gave the engine foreman no instructions to determine if anyone was in the cars "because when men are working in boxcars they have a flag up;" but he admitted he had known since May 1960 that Kellogg did not use flags.

Mr. Eck, an engineer acting as fireman on the switching job, also testified he had switched cars for Kellogg a number of times, that he had never seen any device used by Kellogg to indicate people were working in the cars and that he had noticed that fact for several months.

Mr. Parker, an engineer and fireman for Santa Fe, was also in the moving crew that day. He testified he knew people worked in the cars with Kellogg materials and knew they unloaded cars sitting on the tracks and that he had never seen a flag or signal on any of the Kellogg cars during all the months they had been bringing in the materials. Santa Fe had all this knowledge before coupling onto the cars in question.

3. Humble Oil & Refining Co. v. Bell, Tex. Civ.App., 180 S.W.2d 970; Texaco, Inc. v. Roscoe, 5th Cir., 1961, 290 F.2d 389; Moore v. Texas Company, Tex.Civ.App., 299 S.W.2d 401 (NRE); Texas Electric Service Co. v. Hawthorne, Tex.Civ.App., 135 S.W.2d 531.

Additionally, there is probative evidence Santa Fe knew hazards attached to couplings with cars in which men were working and that it knew the flag practice was a safety device to make known the presence of workmen in a boxcar.

With all this knowledge on the part of Santa Fe considered in connection with appellant's own treatment of the blue flag question, we cannot say the questions propounded to its witnesses by appellee's counsel as to whether it furnished blue flags was improper. Considering the record as a whole it seems to have been a legitimate inquiry upon the foreseeability of the injury by one exercising ordinary care under the particular set of circumstances involved in this case.

Appellant also complains in this point of the refusal of the court to give the following requested charge in connection with the flag question:

"You are instructed that defendant Panhandle & Santa Fe Railway Company owed no duty to plaintiff, an employee of Kellogg Construction Company, to furnish him flags or other warning devices, or to place same on or about cars in which plaintiff might be working; its only duty was to exercise ordinary care under the facts and circumstances then existing."

We hold the refusal of the court to give the requested general charge did not constitute reversible error. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481; Farias v. Gaitan, Tex.Civ.App., 312 S.W.2d 273 (NRE); Dial Temp Air Conditioning Company v. Faulhaber, Tex.Civ. App., 340 S.W.2d 82 (NRE). In any event, we would have to say that the mere asking of the questions and the answers responding thereto, together with the refusal of the requested charge did not constitute reversible error under Rule 434 Vernon's Ann.Texas Rules. Accordingly, we hold point one is without merit.

■ Appellant next claims error in the refusal of the court to permit it to produce before the jury the Industrial Accident Board records showing his claim, suit, and compromise settlement growing out of the same injuries allegedly arising out of the same incident upon which this suit is based.

The only material difference in the claim filed before the Board and the contention before the jury against Santa Fe is in the amount of the compromise settlement. Therefore, it was not admissible to show contradictory prior conduct nor to test the credibility of appellee as a witness on good faith, bias, and prejudice, as contended by appellant. The nature of an industrial claim and a suit of this nature are so different in rules of liability and the measure of damages applicable thereto, the jury may well have been more confused than helped by the admission of such testimony in their presence. Additionally, the instruments themselves show they were subjects of compromise. Under the authority of Johnson v. Willoughby et al., 183 S.W.2d 201 (writ refused); Myers et al. v. Thomas et al., 143 Tex. 502, 186 S.W.2d 811; Dallas Railway & Terminal Co. v. Hendrix, Tex.Civ.App., 261 S.W.2d 610 (NWH); and St. Paul Fire & Marine Insurance Co. v. Murphree, Tex., 357 S.W.2d 744, we hold the point is without merit.

■ Appellant next argues together a contention of error in refusing to let its counsel argue to the jury the amount of settlement in an industrial claim made in 1954 and in refusing to let it prove by Dr. Thomas what the M.D. testified to in the trial of that case, which was compromised during the trial.

The prior back injury was fully explored and Dr. Thomas permitted to testify concerning appellee's physical condition then and following the last injury. Counsel was also permitted to argue appellant's position with respect thereto except as to the amount of the settlement. There being no question of recent fabrication concerning Dr. Thomas' testimony, it was not admissible to prove what he testified to in another law suit. This is particularly true in this case·

in view of his testimony concerning appellee's physical condition at both times.

Under the authorities cited in discussing the previous point, we believe much of the testimony concerning the first compromise settlement should have been rejected under proper objections, but in any event, no error is shown here under Rule 434 V.A.T.R. Points five and eleven are overruled.

In points six and seven appellant complains of error of the court in overruling its objections to the court's charge as given in special issues two and three. In point twelve, it complains of the error of the court in overruling defendant's motion for new trial complaining that the jury's answer to special issue one on proper lookout was unsupported by any evidence, or was against the great weight and preponderance of the evidence.

Appellee argues by brief that appellant admitted through oral argument that the jury had it within its power to find Santa Fe guilty of negligence. Under the charge given, that was perhaps legitimate argument.

■ We are compelled under this record to overrule appellant's contention in point twelve. At least four of appellant's witnesses involved in moving the Kellogg car knew the construction company did not use warning devices to show men working in the boxcars. There is ample evidence that Santa Fe through its employees knew Kellogg had men working in the cars from time to time and knew there was danger attached to striking the cars while men were working therein. There were five railroad employees involved in moving the cars, with at least two of them on the ground, and there is sufficient evidence from which the jury could believe if they had kept a proper lookout they would have found the north door of the boxcar in question open and thus their attention called to the fact that someone might be working therein. There is evidence that some of the employees involved had seen Kellogg men unloading

on both sides of the cars. Under the well-known rule of In Re King's Estate (King v. King et al.), 150 Tex. 662, 244 S.W.2d 660, we cannot say there was no probative evidence to support the proper lookout issue nor that the verdict on that issue was so contrary to the overwhelming weight of all the evidence as to be manifestly wrong and unjust. It was appellant's duty to use only ordinary care in keeping a proper lookout, but it was for the jury to determine if it did so under the facts of this case and under the law applied thereto through the definitions given.

■ Our court and many other courts have held that where the judgment finds support in one ground of negligence, the error of the court in submitting other grounds is generally harmless. McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901 and cases there cited; Kansas City Southern Railway Company v. Simmons, Tex.Civ. App., 350 S.W.2d 884; Louisiana & A. Ry. Co. v. Chapin et al., Tex.Civ.App., 225 S.W. 2d 614 (error refused). We are not holding that the objections to the other two issues were good but even if they were, it would be harmless error if we are correct in our holding on special issue one. We believe we are correct and consider it unnecessary to discuss the questions raised on the other two issues.

Appellant next asserts reversible error in the court's refusal to permit the witness Ratliff to testify that in his opinion the impact of the coupling into the car in which appellee was working was not rough enough to shift the lading.

In the first place such question involved an immaterial issue. Secondly, the nature of the coupling had been fully explored. Thirdly, in view of the whole record made in connection with the coupling, no possible harm could be shown in refusing the answer to the question. Rule 434 V.A.T.R. The same would apply to point nine made in reference to plaintiff's counsel referring to Mr. Jenson, a claim adjustor, as "this smooth claim agent."

The next point we wish to discuss, and the one which has given us the most concern, is that the jury verdict and judgment based thereon is excessive and so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The record is clear that the issues of injury and damages were clearly drawn. Appellant took the position that the injury was only very slight, if in fact there was any injury, and that any damages suffered were nominal. Appellee took the position that he was severely injured and that the damages he suffered as a young man of 32 years of age depending on his physical effort for a livelihood for himself and family were extensive.

A previous operation on his low back for an infectious disease and rheumatoid arthritis were urged by appellant as reasons for any appreciable disability on the part of appellee. Some of appellant's own medical doctors were uncertain on these questions. Dr. Hyde, an orthopedic surgeon used as a witness by appellant, testified that a spinal tap showed no evidence of infectious disease present and that he found no evidence of any aggravation of an old injury from the fall being still present at the time he made his examination of Walker and hospitalized him. He testified Walker was still in serious trouble when he saw him on October 7, 1960; that numbness in his arms and headaches would not commonly be caused from arthritis; that he was given a lot of medicine for pain; and that "limitation of motion, the straight-leg raising test—all those things would indicate to us the man had a lot of pain in his back."

Exhibits introduced into evidence of hospital records show under the signature of Dr. J. R. Carroll, M.D., attending physician; a provisional diagnosis of "cervicodorsal contusions and sprain" and "possible ruptured disc in this area" [the neck and shoulders]. The final diagnosis shows "cervicodorsal contusions and sprain."

Surely it could not be said from this testimony that the jury did not have sufficient evidence to find appellee was injured from the September experience in the Santa Fe boxcar.

Dr. Gorrie, the osteopath used by appellee, testified that Walker first became his patient on November 11, 1960; that from that date to the time of trial, which began on July 26, 1961, he had treated him approximately 65 times; that he had a lot of rigidity between his shoulders from the first rib to the seventh or eighth; that the area between the shoulders was very tender and the muscles very spastic; that when he first saw him he was not able to do manual labor required of a truck driver or construction laborer and up to the time of trial had not been able to do so. Dr. Gorrie admitted he had at one time stated he thought Walker would be ready to go back to work after three months from the time he started treating him but that he did not respond to treatment as he had expected. The evidence shows that Walker made several trips with another truck driver carrying Graham Plow implements to Canada following his September injury and before the trial. Dr. Gorrie testified after Walker made the Graham Plow trips that he was suffering about as much as the first time he saw him.

Corroborative of appellee's contention that the injuries for which he sought recovery herein were not a continuation of his 1954 injury or of an arthritic condition, the testimony shows appellee had been through two pre-employment physical examinations since the 1954 injury prior to the 1960 injury and each time had been accepted for employment.

Taking appellee's testimony of his weekly income from the two jobs he was holding down at the time of his injury at the most conservative figure, he was making $141 per week. This figure multiplied by the fifty two weeks in a year would show an annual income of $7,332. The jury had a right to consider these figures, in addition.

to the physical pain and suffering following the injury. If the osteopath's testimony was to be believed, and the jury had a right to do so, he had already suffered almost a year's disability at the time of the trial. It is true he made some trips to Canada for Graham Plow Company but from Dr. Gorrie's testimony he was not physically able to do so, thus showing work under the whip of economic necessity. Dr. Gorrie said he would not say how much longer Walker would be unable to perform the tasks of a truck driver or construction laborer. If he was still unable after ten and a half months to do the work for which he was accustomed the jury had a right from this record to consider that his disability would extend still further and the right to consider his physical pain and suffering, as defined in the court's charge.

Conversely, there is considerable testimony from medical doctors which indicate appellee's injury was very minor, but we have no authority to substitute our findings for that of the jury under such conflicting testimony and to require a remittitur of all but $1,500 as urged by appellee. A recent opinion of the San Antonio Court of Civil Appeals seems particularly appropriate under the facts of our case. Muro v. Houston Fire & Casualty Insurance Co., Tex.Civ. App., 329 S.W.2d 326, 331 (NRE). That court speaking through Justice Pope said:

"What may jurors do with conflicting evidence before them? They may disbelieve a witness though he is neither impeached nor contradicted. Cheatham v. Riddle, 12 Tex. 112. They may believe one witness and disbelieve others. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. They may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792. They are not required to depend upon the evidence from a single source. Texas & N. O. Ry. Co. v. New, Tex.Civ. App., 95 S.W.2d 170, 174. They may

accept or reject in whole or in part the opinion testimony of physicians. They may accept lay testimony over that of experts. Opinion testimony does not establish material facts as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Fry v. Dixie Motor Coach Corporation, 142 Tex. 589, 180 S.W.2d 135; Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943. 'If the opinions of the experts as given in the evidence do not comport with the jurors' idea of sound logic, the jurors have a right to say so.' Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W. 2d 62, 64."

When the law just quoted is applied to the facts of our case, we cannot justify a remittitur nor a reversal under point three.

In its last point, appellant asserts error in the arrangement of the charge of exclusionary elements of damages.

The record together with the briefs indicate the court numbered the pages after the charge was prepared. In doing so, the exclusionary charge was not arranged next to the damage issue to which it was applicable. Though it would have been better form to have them together, we are unable to see how appellant could possibly have been harmed so long as the exclusionary elements were in the charge. We would have to presume the jury studied the entire charge.

The record here under consideration was without question vigorously prosecuted and just as vigorously defended; two firms of able lawyers represented the appellee; and a firm of able lawyers and appellant's able and distinguished divisional counsel represented appellant. The jury simply did not agree with appellant's theory. A most careful and extensive study of the case has convinced this court that the verdict and judgment are not so against the great weight and preponderance of the evidence

as to be manifestly unjust. We are satisfied with the discussions of that question in each opinion we have announced in this case even though we have been vigorously challenged on it. As a matter of fact, we have been vigorously challenged on everything we have written in this case but it is not our duty nor do we have the authority to substitute our findings for that of the jury which did not agree with appellant. The record is long and tedious and we do not believe there is anything in it to justify sending it back for another trial. Accordingly, as we stated in our other opinions, the judgment of the court below is in all things affirmed.